**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Brian BENNER, Appellant.**

Superior Court of Pennsylvania.

Submitted March 15, 2004.

Filed June 25, 2004.

Brett J. Riegel, Stroudsburg, for appellant.

Elmer D. Christine, Jr., Asst. Dist. Atty., Stroudsburg, for Com., appellee.

Before: STEVENS, TAMILIA, and JOHNSON, JJ.

JOHNSON, J.

¶ 1 Brian Benner appeals the trial court's order denying his Motion for Hearing Regarding Megan's Law Applicability and requiring him to register with law enforcement authorities in accordance with Megan's Law II. See 42 Pa.C.S. § 9795.1. Benner contends that he cannot be subject to the provisions of Megan's Law II (Megan's II) because, on the dates of his guilty plea and sentencing, the statute was not in force. Rather, he contends, his conviction may be subject only to the provisions of Megan's Law I (Megan's I). Benner argues further that because Megan's I did not require lifetime registration as does Megan's II, the trial court erred in requiring him to register for life. Upon review, we conclude that the trial court did not err. Accordingly, we affirm the court's order.

¶ 2 This matter arose in anticipation of Benner's release from prison after three years' incarceration for a sex offense. Benner was arrested on November 9, 1998, after he was found engaging in some form of oral sex with his girlfriend's four-year-old daughter. The Commonwealth charged Benner with rape, involuntary deviate sexual intercourse, aggravated indecent assault, and indecent assault. On February 23, 1999, Benner entered a negotiated guilty plea to a single count of aggravated indecent assault, 18 Pa.C.S. § 3125, purportedly on the representation of the District Attorney of Monroe County that he would not be subject to the registration provisions of Megan's I, the law then in effect. The trial court, the Honorable Ronald E. Vican, accepted Benner's plea and, on April 14, 1999, imposed a sentence of two and one-half to five year's incarceration minus one day with credit for 170 days time served. Neither party disputes that on all of the foregoing dates, Megan's I remained controlling law and Megan's II had not been enacted.

¶ 3 In November 2003, after the repeal of Megan's I and the effective date of Megan's II, Benner was granted parole. Prison officials insisted that as a condition of his release, Benner register his new address with the Pennsylvania State Police in accordance with 42 Pa.C.S. § 9795.1(b), the registration provision of Megan's II applicable to Benner's crime. Although Benner complied, he also filed the motion at issue, requesting that the court excuse him from further compliance with the registration requirement, based on the provisions of Megan's I in effect on the date of imposition of sentence, and the alleged terms of his negotiated plea. Benner asserted that, with the assistance of counsel, he had crafted his guilty plea to avoid registration under Megan's I, and had not been given a Megan's Law colloquy. He argued accordingly that his plea was involuntary and unlawful. In the alternative, Benner contended that if required to register, he should not be subject to the lifetime registration provisions of Megan's II, but rather to the ten-year provisions of Megan's I. The trial court disagreed, concluding that because the failure of the court to inform a defendant of the registration provisions does not invalidate his plea, the defendant's absence of knowledge similarly cannot excuse compliance with the registration provision. The Court concluded further that Megan's II may be applied

retroactively to incarcerated defendants notwithstanding imposition of sentence under the provisions of Megan's I. Accordingly, the court denied Benner's motion and ordered him to comply with the registration provisions of Megan's II. Benner then filed this appeal.

██ ¶ 4 Benner raises the following questions for our review:

1. Whether Mr. Benner should be subject to the lifetime registration requirements of Megan's Law II, when he was subject to only a 10-year registration requirement under Megan's Law I at the time of sentencing?

2. Whether Mr. Benner should be subject to any Megan's Law registration requirement where his guilty plea was unlawfully entered because it was induced, in part, by the District Attorney's agreement not to require registration under Megan's Law I, although such registration was required by statute at the time of the plea and sentencing, and where the sentencing court did not provide notice of the registration at the time of sentencing?

Brief for Appellant at 4. Benner's questions focus on related facets of a single question of law, *i.e.,* whether Benner may be required to register under the provisions of Megan's II. Because Benner's second question poses a threshold issue of whether he can be compelled to register at all, we shall address it first. As with all questions of law, our scope of review is plenary and our standard of review limited to determining whether the trial court committed legal error. *See Commonwealth v. Fleming,* 801 A.2d 1234, 1236 (Pa.Super.2002) (discussing application of Megan's II); *Commonwealth v. Richardson,* 784 A.2d 126, 129 (Pa.Super.2001), *appeal denied,* 568 Pa. 630, 793 A.2d 907

(2002) (discussing application of Megan's I).

¶ 5 In his second question, Benner challenges the trial court's decision to require him to register under either Megan's Law in light of his own expectation that he would not be compelled to register. Brief for Appellant at 7–8. Benner argues that because he had negotiated his plea on the understanding that he would not be subject to registration, and because the trial court did not inform him of the registration requirement, his plea is rendered involuntary. Brief for Appellant at 7–8. Benner premises his position on caselaw recognizing that a defendant's plea is rendered involuntary and his sentence illegal if he is not apprised of the possible duration of the sentence prior to entering his plea. Brief for Appellant at 8 (citing *Commonwealth v. Hodges,* 789 A.2d 764 (Pa.Super.2002)).

██ ¶ 6 Although we recognize the validity of the proposition of law Benner cites, *see Commonwealth v. Persinger,* 532 Pa. 317, 615 A.2d 1305, 1307 (1992), we find it inapplicable to the registration requirement under either Megan's Law. Recently, our Supreme Court determined that the registration provisions of Megan's Law do not constitute criminal punishment. *See Commonwealth v. Williams,* 574 Pa. 487, 832 A.2d 962, 984 (2003). In reliance on *Williams,* this Court determined that the registration requirement "is properly characterized as a collateral consequence of [the defendant's] plea," as it cannot be considered to have a "definite, immediate and largely automatic effect on [a defendant's] punishment." *Commonwealth v. Leidig,* 850 A.2d 743 (Pa.Super.2004). We have concluded accordingly that the principles of due process that require the court to inform the defendant of the length of his prospective sentence prior to accepting his plea do not compel

the court to inform him of the registration requirement. *See id.* (collecting cases from other jurisdictions). We have concluded further that even where the defendant is advised incorrectly concerning the version of the statute to be applied and the length of the corresponding registration period, his plea is not rendered involuntary. *See id.* at 748 (concluding that the fact that defendant "incorrectly was advised that he would be subject to the registration requirements of Megan's Law for a period of ten years, as opposed to a lifetime period," did not invalidate his plea, as registration did not constitute punishment and defendant was aware that some registration requirement applied).

¶ 7 We find the disposition in *Leidig* controlling. Because the registration requirement under either Megan's Law is a collateral consequence of the defendant's plea, the failure of the court to apprise him of it does not invalidate his plea. Moreover, Benner, like the defendant in *Leidig,* concedes his awareness of the registration requirement under Megan's I, acknowledging that it was a matter of concern when he entered his plea. Although he contends that he relied on the representation of the District Attorney that he would not be required to register, the record provides no substantiation that the District Attorney ever made such a representation. Moreover, Benner concedes that the law indisputably applicable on the date he tendered his plea required registration for ten years following release from prison. Accordingly, we conclude that the failure of the trial court to inform Benner of the registration requirement prior to accepting his plea invalidates neither the plea nor application of the registration requirement under Megan's I.

¶ 8 Having found no impediment to imposition of the registration requirement under Megan's I, we turn to the trial court's determination to apply the lifetime registration provisions of Megan's II, as raised in Benner's question 1. In support of his claim that he should be subject only to ten years' registration under Megan's I, Benner argues a single assertion, *i.e.,* "[t]he registration requirement in effect at the time of sentencing is the one that should be imposed." Brief for Appellant at 7. Unfortunately, Benner's eighteen-line argument provides scant support for so definitive an assertion, citing only a single case that fails to advance his argument. Brief for Appellant at 7 (citing *Fleming,* 801 A.2d 1234).

¶ 9 In *Fleming,* we considered a defendant's challenge to application of the registration requirement of Megan's II on grounds that when he had committed the acts underlying his conviction, Megan's I was still controlling law. *See Fleming,* 801 A.2d at 1237. Fleming argued that because his conduct pre-dated the adoption of Megan's II, application of its lifetime registration provision amounted to imposition of an *ex post facto* law, and was therefore constitutionally infirm. *See id.* at 1237–38. We disagreed, concluding that "there is no violation of any *ex post facto* provision in requiring registration when the acts underlying an individual's conviction occurred prior to the effective date of the registration requirements." *Id.* at 1238 (citing *Commonwealth v. Gaffney,* 557 Pa. 327, 733 A.2d 616, 617 (1999)). We reasoned, specifically, that the increase in the length of the registration period under Megan's II, like the registration requirement itself, does not constitute punishment. *See Fleming,* 801 A.2d at 1240. Because the existence of some punitive element is a prerequisite to any determination that a law is *ex post facto,* and because the defendant raised no other argument, we concluded that he was not entitled to relief. Although we recognized, in a single sentence, that the court had accepted the defendant's plea and imposed sentence af-

ter the effective date of Megan's II, *see id.* at 1239, nothing in our analysis grants that factor dispositive effect or "holds," as Benner contends, that "the date on which a defendant pled guilty [is] the operative date" determining which version of Megan's Law may be applied. Brief for Appellant at 7. Benner provides no further analysis of why such a conclusion is necessarily required, nor do we discern a distinction inherent in the date of imposition of sentence that renders it controlling when the date on which the conduct itself occurred clearly is not. Thus, we do not find *Fleming* dispositive.

¶ 10 Moreover, we have declined in other cases to accord dispositive effect to dates of conduct, plea tender, or sentencing so long as the defendant remains in the custody of correctional authorities serving any portion of his original sentence. *Compare Commonwealth v. Miller,* 787 A.2d 1036, 1039 (Pa.Super.2001) (applying Megan's II registration requirement to defendant who pled guilty to sex offense in Hawaii prior to Megan's II enactment where defendant moved to Pennsylvania after release from prison to complete "supervised release" under original sentence) *with Richardson,* 784 A.2d at 131–32 (declining to require defendant to register under provisions of Megan's I because defendant had fully served his sentence for sex offense prior to effective date of Megan's I and remained in prison on unrelated offenses). Viewing these dispositions through the lens provided in *Leidig,* we recognize a premise, implicit but no less compelling, that because the registration requirements under Megan's Law impose only collateral consequences of the actual sentence, their application is not limited by the factors that control the imposition of sentence. Thus, while a defendant may be subject to conviction only under statutes in effect on the date of his acts, and sentence configuration under the Guidelines in effect on that same date, the application of the registration requirements under Megan's Law is not so limited. This is so due to the collateral nature of the registration requirement. *See Leidig,* 850 A.2d 743, 746 n. 3 (distinguishing holding in *Richardson* on basis that in that case sentence for sex offense had been fully served when correctional authority sought to impose registration requirement). We read these cases to suggest that the collateral effect of current legislation may be imposed on the defendant so long as he remains in the custody of correctional authorities to discharge any part of his sentence for the sex offense. *See Miller,* 787 A.2d at 1038 n. 7; *Richardson,* 784 A.2d at 131.

¶ 11 Because Benner continued to serve his sentence for the sex offense at issue after the promulgation of Megan's II, he remains subject to the collateral effect of its application. We are compelled to conclude accordingly that the trial court did not err in so holding.

¶ 12 Order **AFFIRMED**.