**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**Deono Terrell HAINESWORTH,**
**Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 19, 2013.

Filed Dec. 12, 2013.

Jennifer L. Dupilka, Assistant District Attorney, Greensburg, for Commonwealth, appellant.

John K. Sweeney, Greensburg, for appellee.

BEFORE: BENDER, P.J., FORD ELLIOTT, P.J.E., BOWES, J., GANTMAN, J., DONOHUE, J., ALLEN, J., LAZARUS, J., OTT, J., and WECHT, J.

OPINION BY BENDER, P.J.

Appellant, the Commonwealth of Pennsylvania, appeals from an order entered on December 19, 2012, by the Honorable John Blahovec of the Court of Common Pleas of Westmoreland County. That order states that Appellee, Deono Terrell Hainesworth, is not required to register as a sex offender under Act 111 of 2011, 42 Pa.C.S. § 9799.10, *et seq.*, also known as the Sex Offender Registration and Notification Act (SORNA). The Commonwealth contends that the trial court erred in determining that Hainesworth is not subject to the registration requirements of SORNA. After careful review, we conclude that the court did not err when it ordered specific enforcement of the parties' plea bargain. Accordingly, we affirm.

On January 26, 2009, Hainesworth was charged as follows: three counts of statutory sexual assault, 18 Pa.C.S. § 3122.1; two counts of aggravated indecent assault, 18 Pa.C.S. § 3125(a)(8); three counts of indecent assault, 18 Pa.C.S. § 3126(a)(8); and two counts of criminal use of a communication facility, 18 Pa.C.S. § 7512. On February 27, 2009, Hainesworth entered a negotiated plea of guilty to three counts of statutory sexual assault, three counts of indecent assault, and one count of criminal use of a communication facility.[1]

At the time of Hainesworth's plea, the registration of defendants convicted of sex offenses was governed by 42 Pa.C.S.

---

1. Hainesworth entered a simultaneous plea of guilty to statutory sexual assault, 18 Pa.C.S. § 3122.1(a)(1), at CP–65–CR–105–2009. This conviction is not a sexually violent offense (Tier offense) under SORNA. Hainesworth's sentence for this conviction expired on February 11, 2011. This conviction did not implicate Megan's Law, nor does it implicate SORNA.

§ 9791, *et seq.*, commonly referred to as "Megan's Law." Under 42 Pa.C.S. § 9795.1(b)(2), a defendant convicted of aggravated indecent assault was subject to a lifetime registration requirement. This charge was withdrawn by the Commonwealth in the instant case pursuant to the plea agreement reached by the parties to this appeal.[2] Both parties concede that none of the crimes to which Hainesworth pled guilty required registration under Megan's Law at the time his plea was entered. This fact was acknowledged on the record during Hainesworth's plea colloquy. N.T. Guilty Plea, 2/27/09, at 2–3. Accordingly, Hainesworth did not register.

SORNA was enacted on December 20, 2011, and became effective on December 20, 2012. SORNA provides that:

> The following individuals shall register with the Pennsylvania State Police as provided in sections 9799.15 (relating to period of registration), 9799.19 (relating to initial registration) and 9799.25 (relating to verification by sexual offenders and Pennsylvania State Police) and otherwise comply with the provisions of this subchapter:
>
> . . .
>
> (2) An individual who, on or after the effective date of this section, is, as a result of a conviction for a sexually violent offense . . . being supervised by the Pennsylvania Board of Probation and Parole or county probation or parole. . . .

42 Pa.C.S. § 9799.13(2). "Sexually violent offense" is defined by SORNA as follows: "An offense specified in section 9799.14 (relating to sexual offenses and tier system) as a Tier I, Tier II or Tier III sexual offense." 42 Pa.C.S. § 9799.12. The charge of indecent assault to which Hainesworth pled guilty in the instant case, 18 Pa.C.S. § 3126(a)(8), is categorized as a Tier II sexual offense. 42 Pa. C.S. § 9799.14(c)(1.2). A Tier II sexual offense conviction requires a defendant to register with the State Police for 25 years. 42 Pa.C.S. § 9799.15(a)(2). Therefore, Hainesworth ostensibly became subject to a new registration requirement when he was on probation on the date SORNA became effective, having previously pled guilty to a Tier II offense.

Hainesworth filed a motion seeking termination of his supervision on December 13, 2012, in contemplation of the registration requirement that would be imposed on December 20, 2012, if he remained on probation. Following a hearing on December 18, 2012, the trial court denied the petition to terminate Hainesworth's supervision, but entered an order stating that Hainesworth was not subject to the registration requirements of SORNA. Specifically, the trial court's order states:

> Application of [SORNA] to [Hainesworth] violates due process of law, fundamental fairness, and provisions of the negotiated plea agreement entered into

---

**2.** There is one point of ambiguity in the record below that requires clarification. The Commonwealth stated at the hearing on the motion for termination of Hainesworth's supervision that "there was no amending of the [criminal information] to make it non-Megan's Law," and informed the trial court that they "didn't drop charges" and "it was never a Megan's Law case." N.T. Hearing, 12/18/12, at 21–22. On appeal, the Commonwealth concedes that "pursuant to the plea bargain, [the Commonwealth] moved to dismiss offenses that would have required Megan's Law registration." Commonwealth's Brief at 7. To the extent that the Commonwealth suggested below that Megan's Law did not apply to the charges initially brought against Hainesworth, this assertion was incorrect. As conceded in the Commonwealth's brief, Hainesworth was charged with crimes that would have subjected him to a registration requirement, and these charges were withdrawn by the Commonwealth pursuant to plea negotiations.

between [Hainesworth] and the government. It would also destroy the process of negotiated plea agreements essential to the efficient disposition of criminal cases in Westmoreland County.

Trial Court's Order, 12/19/12, at 1–2.[3]

The Commonwealth filed a timely notice of appeal, as well as a timely concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and now presents the following question for our review:

I. WHETHER THE TRIAL COURT COMMITTED AN ERROR OF LAW BY DETERMINING THAT THE DEFENDANT IS NOT SUBJECT TO THE REGISTRATION REQUIREMENTS OF SORNA, 42 Pa.C.S. § 9799, *et seq.*?

Commonwealth's Brief at 4.

We note that the parties to this appeal have characterized this issue very differently. Essentially, Hainesworth construes the issue in the same manner as the trial court: that non-registration was a term of his plea agreement, and he is due the benefit of his bargain. Conversely, the Commonwealth construes the issue as a question of statutory application. The Commonwealth argues that this Court has previously upheld changes to Megan's Law registration requirements while the registrant was under correctional supervision, and alleges that registration requirements are a non-punitive collateral consequence of a conviction. Having characterized the issue differently, the parties to this appeal have invoked two distinct standards of review.

■ We conclude as an initial matter that the issue before us was properly framed by Hainesworth and the trial court

as an analysis of contract law. We therefore apply the standard of review invoked by Hainesworth: "In determining whether a particular plea agreement has been breached, we look to 'what the parties to this plea agreement reasonably understood to be the terms of the agreement.'" *Commonwealth v. Fruehan,* 384 Pa.Super. 156, 557 A.2d 1093, 1095 (1989) (internal citations omitted). Such a determination is made "based on the totality of the surrounding circumstances," and "[a]ny ambiguities in the terms of the plea agreement will be construed against the [Commonwealth]." *Commonwealth v. Kroh,* 440 Pa.Super. 1, 654 A.2d 1168, 1172 (1995) (internal citations omitted).

■ Having reviewed the record under this standard of review, we are unpersuaded by the Commonwealth's arguments. The terms of Hainesworth's plea were carefully laid out on the record, as can be seen in the following exchange:

[COURT ASSISTANT:] Is this Megan's Law?

[THE COMMONWEALTH:] It is not Megan's Law. Terms and conditions are as follows: At Count 1 on case 106, 11-and-a-half to 23-and-a-half months['] incarceration. Costs and fees. No contact direct or indirect with the victim or the victim's family. At Count 2, 11-and-a-half to 23 concurrent to Count 1. Count 3, no further sentence. Count 6, one year probation consecutive to Count 2. Count 7, one year probation consecutive to Count 6. Count 8, one year probation consecutive to Count 7. Count 9, two years['] probation consecutive to Count 8. That's a total of five years['] probation.

**3.** The trial court did not file a 1925(a) opinion. Rather, the court issued an Order of Court Pursuant to 1925(a) on January 22, 2013, referring to the December 19, 2012 order finding that Hainesworth was not required to register.

[THE COURT:] These are felony sexual assault and they're not Megan's Law?

[THE COMMONWEALTH:] The Commonwealth will move to dismiss Counts 4, 5 and 10. They are not. They're statutory—

[THE COURT:] Statutory sexual assault, felony two.

[THE COMMONWEALTH:] Is not Megan's Law.

[THE COURT:] You're dismissing 4 and 5?

[THE COMMONWEALTH:] And 10.

[THE COURT:] 4, 5 and 10.

. . .

N.T. Guilty Plea, 2/27/09, at 2–3. Subsequently, the following exchange occurred:

[THE COURT:] [W]as the agreement stated correctly by the Commonwealth?

[COUNSEL FOR HAINESWORTH:] Yes, it was. . . . Do you have any questions about anything you read?

[HAINESWORTH:] No, sir. . . .

[THE COURT:] There's no restitution or anything like that?

[THE COMMONWEALTH:] There is not, Your Honor.

N.T. Guilty Plea, 2/27/09, at 5–6. Hainesworth then asked if he was eligible for school release, and the trial court addressed his question. *Id.* at 7. Likewise, Hainesworth asked for clarification regarding time credit, and the court explained this to him as well. *Id.* at 11–12. The court then accepted Hainesworth's plea, and the hearing was adjourned. *Id.* at 12.

The trial court and Hainesworth were assured no less than twice by the Commonwealth that the plea did not obligate Hainesworth to register as a sex offender. Moreover, these statements were made as part of the Commonwealth's recitation of the terms of the plea agreement, which were laid out carefully on the record. It is unambiguous from the record that both parties to this appeal, and the trial court, understood that a registration requirement was not included as a term of Hainesworth's plea agreement.

Indeed, the plea agreement appears to have been precisely structured so that Hainesworth would not be subjected to a registration requirement. Hainesworth was initially charged with ten counts. Pursuant to the plea agreement, three counts were withdrawn: both counts of aggravated indecent assault (a Megan's Law offense), and one count of criminal use of a communication facility (a non-Megan's Law offense). Thus, nearly all of the withdrawn counts were Megan's Law offenses. Moreover, it is significant that the plea agreement included one count of criminal use of a communication facility. Unlike this charge, every count of aggravated indecent assault was withdrawn. In other words, the Commonwealth withdrew every single count of only one crime, and that crime was the Megan's Law offense.

Given that the record shows that non-registration was a term of Hainesworth's plea bargain, the next question is whether it was error for the trial court to order specific enforcement of the terms of that bargain. We conclude that it was not.

The Commonwealth contends that because SORNA registration is a non-punitive collateral consequence of Hainesworth's conviction, Hainesworth is subject to registration requirements that did not exist at the time of his plea. In response, Hainesworth argues that such a consideration is irrelevant to our analysis here, and the sole consideration is whether non-registration was a term of his plea agreement. We agree that the dispositive question is whether registration was a term of the bargain struck by the parties to this ap-

peal.[4] The terms of plea agreements are not limited to the withdrawal of charges, or the length of a sentence. Parties may agree to—and seek enforcement of—terms that fall outside these areas. *See Kroh,* 654 A.2d at 1169 (ordering specific enforcement of a plea bargain that barred the Commonwealth from calling the defendant as a witness in a separate proceeding). Moreover, even though a plea agreement arises "in a criminal context, it remains contractual in nature and is to be analyzed under contract law standards." *Id.* at 1172.

■ The reality of the criminal justice system is that nearly all criminal cases are disposed of by plea bargains: "[n]inety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas." *Missouri v. Frye,* —— U.S. ——, 132 S.Ct. 1399, 1407, 182 L.Ed.2d 379 (2012) (internal citations omitted). Plea bargaining "is not some adjunct to the criminal justice system; it *is* the criminal justice system." *Id.* Accordingly, it is critical that plea agreements are enforced, "to avoid any possible perversion of the plea bargaining system." *Commonwealth v. Fruehan,* 384 Pa.Super. 156, 557 A.2d 1093, 1094 (1989) (internal citations omitted).

"[R]egistration obviously has serious and restrictive consequences for the offender, including prosecution if the requirement is violated. Registration can also affect the offender's ability to earn a livelihood, his housing arrangements and options, and his reputation." *Commonwealth v. Gehris,* —— Pa. ——, 54 A.3d 862, 878 (2012) (Castille, C.J., Opinion in Support of Reversal). In fact, the requirements of registration are so rigorously enforced, even "[t]he occurrence of a natural disaster or other event requiring evacua-

tion of residences shall not relieve the sexual offender of the duty to register." 42 Pa.C.S. § 9799.25(e). As noted by Hainesworth, when a defendant agrees to a guilty plea, he gives up his "constitutional rights to a jury trial, to confrontation, to present witness, to remain silent and to proof beyond a reasonable doubt." Hainesworth's Brief at 22. In negotiating a plea that will not require him to register as a sex offender, the defendant trades a non-trivial panoply of rights in exchange for his not being subject to a non-trivial restriction. Fundamental fairness dictates that this bargain be enforced.

Hainesworth's reliance on the decision of the United States Supreme Court in *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), lends support to this conclusion. The *Santobello* Court ruled that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262, 92 S.Ct. 495. This doctrine is also reflected in the law of this Commonwealth: "Plea bargains which are entered knowingly and voluntarily are viewed with favor in this Commonwealth. If a trial court accepts a plea bargain, the defendant who has given up his constitutional right to trial by jury must be afforded the benefit of all promises made by the district attorney." *Fruehan,* 557 A.2d at 1094. Specific enforcement of valid plea bargains is a matter of fundamental fairness. *Commonwealth v. Mebane,* 58 A.3d 1243, 1249 (Pa.Super.2012).

Hainesworth correctly analogizes the instant case to a situation where the defendant unwittingly entered a plea to a sentence that failed to comply with the

---

4. Accordingly, we do not reach the question of whether the registration requirement contained in SORNA is a collateral consequence of Hainesworth's conviction.

manner in which the Bureau of Parole was authorized to compute sentences. In that case, as in the instant one, the law applicable to a term of the defendant's plea bargain superseded the parties' negotiated agreement. *Commonwealth v. Zuber*, 466 Pa. 453, 353 A.2d 441 (1976). The Supreme Court of this Commonwealth ruled that specific enforcement was necessary, as the defendant was nonetheless entitled to the benefit of his bargain. *Id.*

Conversely, the Commonwealth's attempt to analogize the instant case to prior decisions is misplaced. In one case relied on by the Commonwealth, a defendant entered a plea of guilty to aggravated indecent assault. *Commonwealth v. Benner*, 853 A.2d 1068 (Pa.Super.2004). At the time of Benner's plea, a conviction for this crime carried a 10–year registration requirement under Megan's Law. *Id.* at 1069. While Benner was on parole, a new version of Megan's Law was enacted by the legislature, requiring those convicted of aggravated indecent assault and still under correctional supervision to be subject to a lifetime registration provision. *Id.* On appeal, Benner argued that his plea was involuntary and unlawful because he was not made aware of the registration requirement by the trial court, or, in the alternative, that he should be subject to the 10–year requirement in effect at the time of his plea. *Id.* at 1071. Benner conceded that he was aware of the 10–year registration requirement at the time of his plea. *Id.* at 1071. This Court concluded, "Although [Benner] contends that he relied on the representation of the District Attorney that he would not be required to register, the record provides no substantiation that the District Attorney ever made such a representation." *Id.* Thus, we held that the new lifetime registration requirement was applicable.

*Benner* is easily distinguished from the instant case. Benner was always subject to a registration requirement, which he was aware of at the time of his plea. Benner pled guilty to the very same crime that was withdrawn by the Commonwealth in the instant case so that Hainesworth would not be subject to a registration requirement. Moreover, unlike the instant case, the record did not support Benner's contention that he had bargained for non-registration as a term of his plea. Accordingly, the holding in *Benner* is inapplicable to the instant case. All crimes requiring Hainesworth to register were withdrawn by the Commonwealth pursuant to the plea bargain, and that bargain was structured for the specific purpose of not requiring Hainesworth to register. Unlike Benner, Hainesworth has never been subject to a registration requirement.

Moreover, the cases relied upon by the Commonwealth address the voluntariness of those defendants' pleas. *See Benner, supra; Commonwealth v. Leidig*, 598 Pa. 211, 956 A.2d 399 (2008). The defendants in *Leidig* and *Benning* did not seek specific enforcement of their pleas under contract law principles. In the instant case, Hainesworth does not challenge the validity of his plea, or seek to withdraw it; rather, he asks this Court to enforce the terms of his plea. Thus, the cases cited by the Commonwealth do not control the issue currently before this Court.

Accordingly, we conclude that the parties to this appeal entered into a plea bargain that contained a negotiated term that Hainesworth did not have to register as a sex offender. As such, it was not error for the trial court to order specific enforcement of that bargain, and we affirm the trial court's order.

Hainesworth also proffers the argument that SORNA is unconstitutional, as it vio-

lates the Contracts Clauses of the Federal and Pennsylvania Constitutions. As the Commonwealth has not raised this argument, and having concluded on non-constitutional grounds that the trial court's ruling was proper, we decline to address the constitutionality of the statute.[5] *See In re Farnese,* 609 Pa. 543, 17 A.3d 357, 373 (2011).

Order *affirmed.*

---

**5.** We also note that the question of whether the new registration requirements of SORNA may be retroactively applied to defendants convicted at trial of offenses that did not require registration under the former Megan's Law is not before this panel, and we decline to address it at this juncture.