J-A23010-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DONNELL SHIELDS, JR. | |
| Appellant | No. 2004 WDA 2015 |

Appeal from the Order November 19, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0013368-2008

BEFORE:  LAZARUS, J., STABILE, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED DECEMBER 20, 2016**

Donnell Shields, Jr., appeals from the order, entered in the Court of Common Pleas of Allegheny County, denying his Motion to Enforce Plea Agreement.  Upon careful review, we affirm.

On August 10, 2008, Shields was working as a janitor at a shopping complex when he lured a 13-year-old girl into a secluded maintenance room and sexually assaulted her.  Shields was initially charged with rape, statutory sexual assault, false imprisonment, unlawful restraint and indecent assault.  However, pursuant to a plea agreement with the Commonwealth, the charges of rape, false imprisonment and unlawful restraint were withdrawn and Shields pled guilty to statutory sexual assault, indecent

_____

[*] Retired Senior Judge assigned to the Superior Court.

assault and corruption of minors. He was sentenced to a term of 2 to 5 years' imprisonment. Shields did not file post-sentence motions or an appeal.

On November 17, 2015, Shields filed a motion to enforce his plea agreement, alleging that the new registration requirements imposed upon him pursuant to the Sexual Offender Registration and Notification Act, 42 Pa.C.S.A. §§ 9791–9799 ("SORNA"), violated the terms of his plea agreement. The trial court denied Shields' motion, and the instant appeal follows, in which Shields raises the following issues for our review:

1. Did the Commonwealth violate [Shields'] constitutional rights and breach the plea contract by retroactively compelling him to register as a sexually violent offender?

2. Did the Commonwealth violate [Shields'] due process rights by making SORNA retroactively applicable to him?

3. Does the retroactive application of SORNA violate the *ex post facto* provisions of the Pennsylvania and United States Constitutions?

Brief of Appellant, at 7.

Shields' first claim invokes contract principles. "In determining whether a particular plea agreement has been breached, we look to 'what the parties to this plea agreement reasonably understood to be the terms of the agreement.'" *Commonwealth v. Hainesworth*, 82 A.3d 444, 447 (Pa. Super. 2013) (en banc), quoting *Commonwealth v. Fruehan*, 557 A.2d 1093, 1095 (Pa. Super. 1989). Such a determination is made "based on the totality of the surrounding circumstances," and "any ambiguities in the terms

of the plea agreement will be construed against the Commonwealth." ***Id.***, quoting ***Commonwealth v. Kroh***, 654 A.2d 1168, 1172 (Pa. Super. 1995) (brackets omitted).

Shields asserts that, because a plea agreement is a contract, it must be interpreted and enforced using the principles of contract law. Applying such principles, Shields argues that the statutory collateral consequences as they existed at the time he entered his plea are implied terms of his plea contract. ***See Empire Sanitary Landfill v. Dep't of Envtl. Res.***, 684 A.2d 1047, 1059 (Pa. 1996) ("The laws that are in force at the time parties enter into a contract are merged with the other obligations that are specifically set forth in the agreement."). Accordingly, Shields argues, the Commonwealth is bound by those terms, and subsequent changes to sex offender registration requirements are not applicable to him. Shields asserts that application of the new registration requirements would be tantamount to a unilateral modification of the plea contract by the Commonwealth, and that unilateral modification of a contract is not permitted. Shields argues, without citation to authority, that:

> [u]nder contract law principles, the Commonwealth must demonstrate that it had the authority to impose a post-conviction sex offender registration requirement. Therefore, in the absence of statutory authority showing that Mr. Shields had to register at the time of his conviction, the Commonwealth must present evidence demonstrating that it 1.) specifically negotiated for a sex offender registration or 2.) gave Mr. Shields notice that it reserves the right to impose registration obligations in the future.

Brief of Appellant, at 13. Shields is entitled to no relief.

Prior to addressing the merits of Shields' claim, some background regarding his offenses is in order. As stated above, Shields pled guilty to, *inter alia*, indecent assault and statutory sexual assault. At the time of his plea, indecent assault carried a registration period of ten years under former section 9793 of the Sentencing Code. *See* 42 Pa.C.S.A. § 9793(b)(3), deleted by 2000, May 10, P.L. 74, No. 18, § 3, effective in 60 days. Under SORNA, the registration period for that offense was increased to twenty-five years.

Shields also pled guilty to statutory sexual assault. At the time of Shields' plea, the offense was not registerable under the then-existing Megan's Law II and was defined as follows:

> Except as provided in section 3121 (relating to rape), a person commits a felony of the second degree when that person engages in sexual intercourse with a complainant under the age of 16 years and that person is four or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S.A. § 3122.1 (effective to February 20, 2012). Subsequently, effective February 21, 2012, the legislature redefined statutory sexual assault to include two gradations of the offense. The amended statute provides as follows:

> (a) Felony of the second degree.--Except as provided in section 3121 (relating to rape), a person commits a felony of the second degree when that person engages in sexual intercourse with a complainant to whom the person is not married who is under the age of 16 years and that person is either:

(1) four years older but less than eight years older than the complainant; or

(2) eight years older but less than 11 years older than the complainant.

(b) Felony of the first degree.--A person commits a felony of the first degree when that person engages in sexual intercourse with a complainant under the age of 16 years and that person is 11 or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S.A. § 3122.1, amended 2011, Dec. 20, P.L. 446, No. 111, § 1, effective in 60 days. At the time he committed the offense, Shields was 27 years old and his victim was 13. As such, his offense would have fallen under subsection 3122.1(b) of the amended statute.

With the enactment of SORNA in 2012, statutory sexual assault became a registerable offense. Pursuant to the tier system established by the legislation, an offense under subsection (b) of the statute is classified as a Tier III offense, which is subject to lifetime registration under 42 Pa.C.S.A. § 9799.15(a)(3). Thus, as a result of the enactment of SORNA, Shields is ostensibly required to register (1) for 25 years – up from 10 years – for indecent assault and (2) for life – where previously he had not been required to register at all – for statutory sexual assault.[1]

---

[1] In his brief, Shields asserts without explanation that he was compelled to register "[o]n February 14, 2013[.]" Brief of Appellant, at 8. Section 9799.13 of SORNA addresses the applicability of the registration requirements and identifies those individuals required to register under the Act. The subsections of section 9799.13 set forth various triggering criteria for registration, based on parameters including residency, supervision status and criminal convictions. Shields does not specify his release date;
*(Footnote Continued Next Page)*

We have previously addressed contract principles as they apply to a defendant who entered a plea agreement prior to the enactment of SORNA. In **Hainesworth**, **supra**, the defendant entered a plea to charges that, at the time, were not subject to the registration requirements of Megan's Law. During Hainesworth's plea hearing,

> [t]he trial court and Hainesworth were assured no less than twice by the Commonwealth that the plea did not obligate Hainesworth to register as a sex offender. Moreover, these statements were made as part of the Commonwealth's recitation of the terms of the plea agreement, which were laid out carefully on the record. It is unambiguous from the record that both parties to this appeal, and the trial court, understood that a registration requirement was not included as a term of Hainesworth's plea agreement.

**Id.** at 448.

Upon SORNA's enactment in 2012, one of the crimes to which Hainesworth had pled guilty became a registerable offense. Accordingly, prior to the effective date of SORNA, Hainesworth filed a motion seeking a declaration from the trial court that he was not subject to registration, based upon the express terms of his plea agreement. The trial court granted relief.

_(Footnote Continued)_ ———————————

however, it appears his obligation to register would be governed by either subsection (2) or (3.1) of section 9799.13. If subsection (2) controls, Shields would be subject to a 25-year period of registration for indecent assault and lifetime registration for statutory sexual assault. If subsection (3.1) controls, Shields would not be required to register for his statutory sexual assault conviction, but would be obligated to register for 25 years for indecent assault. Shields has asserted that he is subject to lifetime registration. Although he offers no substantiation for that claim, for purposes of this appeal we will assume it to be true, as it does not affect our disposition of the matter.

On appeal, this Court agreed with the trial court, finding that Hainesworth's "plea agreement appears to have been precisely structured so that [he] would not be subjected to a registration requirement." *Id.* The Court concluded: "In negotiating a plea that will not require him to register as a sex offender, the defendant trades a non-trivial panoply of rights in exchange for his not being subject to a non-trivial restriction. Fundamental fairness dictates that this bargain be enforced." *Id.* at 449.

Unlike in **Hainesworth**, here, there is no evidence of record to even suggest that sex offender registration was a term of Shields' plea agreement. Nor does Shields argue that he expressly bargained for non-registration during the plea negotiation process. In **Hainesworth**, the dispositive question was "whether registration was a term of the bargain struck by the parties." *Id.* at 448. As registration was neither mentioned during Shields' plea hearing, nor addressed in his written colloquy, **Hainesworth** cannot provide a basis for relief in this matter.

Moreover, Shields has always been required to register as a sex offender. SORNA has merely increased his period of registration. We have previously held that amendments to the law governing the duration of sex offender registration are enforceable against defendants who entered into plea bargains under prior registration schemes. **See Commonwealth v. Benner**, 853 A.2d 1068 (Pa. Super. 2004) (where record at guilty plea and sentencing was silent as to whether defendant was required to register under Megan's Law, post-sentence amendment requiring lifetime registration

applied to defendant, even though version of Megan's Law in effect at sentencing only required registration for ten years). Accordingly, the trial court did not err in denying Shields' motion.

In Shields' last two issues, he challenges the constitutionality of SORNA. "[T]he constitutionality of a statute presents a pure question of law. Therefore, our standard of review is de novo and scope of review plenary." *Commonwealth v. Wade*, 33 A.3d 108, 115–16 (Pa. Super. 2011). Further, a statute "is presumed to be constitutional and will only be invalidated as unconstitutional if it clearly, palpably, and plainly violates constitutional rights." *Commonwealth v. Brown*, 26 A.3d 485, 493 (Pa. Super. 2011).

Shields first claims that the Commonwealth violated his right to due process by making the registration provisions of SORNA retroactively applicable to him. However, in his appellate brief, Shields provides no citation to authority in support of this argument. Accordingly, he has waived this claim. *Commonwealth v. Brougher*, 978 A.2d 373 (Pa. Super. 2009) (claim is waived if there is no citation to authority).

Shields also asserts that retroactive application of SORNA violates the *ex post facto* provisions of the U.S. and Pennsylvania constitutions. The U.S. Constitution provides that: "No State shall . . . pass any . . . *ex post facto* Law[.]" U.S. Const. art. I, § 10, cl. 1. Similarly, the Pennsylvania Constitution provides that: "No *ex post facto* law . . . shall be passed." Pa. Const. art. I, § 17. Our Supreme Court has interpreted these *ex post facto*

clauses to be effectively identical. *See Commonwealth v. Young*, 637 A.2d 1313, 1317 (Pa. 1993).

The Constitution's explicit prohibition against *ex post facto* laws applies only to those laws that inflict criminal punishment. *Commonwealth v. Kline*, 695 A.2d 872, 874 (Pa. Super. 1997), quoting *United States Trust Co. of New York v. New Jersey*, 431 U.S. 1, 17 n.13 (1977). Thus, the key inquiry in ascertaining whether the *ex post facto* clause applies to the registration obligations imposed under SORNA is whether they are punitive, either in intent or in effect.

> We conduct our analysis in two steps. First, we must look to the legislature's subjective purpose. *Smith v. Doe*, 538 U.S. 84, 92 [] (2003) . . . . "If the intention of the legislature was to impose punishment, that ends the inquiry." *Id.* However, if the legislature prefers to refer to the statute as imposing a civil regulatory scheme, a more searching inquiry in the second step is required. *Id.* In conducting this second step inquiry, "we must [] examine whether the statutory scheme is so punitive either in purpose or effect as to negate [the State's] intention to deem it civil." *Id.* The Supreme Court has held that only the "clearest proof" will suffice to override the legislature's preferred classification of the statute. *Id.*

*Commonwealth v. Perez*, 97 A.3d 747, 751 (Pa. Super. 2014).

If we conclude that the legislature's subjective purpose was non-punitive, we proceed to the second prong of the *Smith* inquiry – a determination as to whether the effects of the statute are sufficiently punitive to override the legislature's non-punitive intent. To this end, the U.S. Supreme Court, in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144 (1963), mandated a seven-factor test. Specifically, courts must consider:

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions.

*Id.* at 168–169.

In his brief, Shields fails to engage in any meaningful analysis under **Smith** and fails even to mention the **Mendoza-Martinez** factors. Rather, he cites a single case and argues that:

> [t]he act of reporting in person is identical to the requirements placed on individuals who are subject to probation and parole supervision. **Commonwealth v. Woodruff**, [135 A.3d 1045] (Pa. Super. 2016). As applied to parolees and probationers, reporting requirements are a restriction on their liberty. This is a "traditional method [. . .] of punishment." **Id.**

Brief of Appellant, at 24.

In **Woodruff**, this Court did conclude that quarterly, in-person reporting requirements were analogous – although not, as Shields states, "identical" – to those accompanying probation. As such, we found that the second **Mendoza–Martinez** factor – whether the constraints imposed have historically been regarded as a punishment – weighed in favor of finding SORNA's effects to be punitive. However, the **Woodruff** Court also ultimately concluded, after weighing all of the **Mendoza–Martinez** factors, that SORNA's requirements were not punitive in effect and, therefore, did not violate the prohibition against *ex post facto* laws. **See also Perez**,

*supra* (finding SORNA registration regime constitutional under federal and state *ex post facto* clauses).

Because Shields has failed to demonstrate that the registration requirements under SORNA are punitive in either intent or effect, he is entitled to no relief.[2]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/20/2016

---

[2] We note that our Supreme Court has granted allowance of appeal in two cases to address, *inter alia*, the question of whether SORNA violates *ex post facto* principles. **See Commonwealth v. Gilbert**, 135 A.3d 178 (Pa. 2016); **Commonwealth v. Reed**, 135 A.3d 177 (Pa. 2016).