J-A09036-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN TRAVELL THURMON | : | |
| | : | |
| Appellant | : | No. 1038 WDA 2024 |

Appeal from the Order Entered June 26, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0003900-2007

BEFORE:    KUNSELMAN, J., NICHOLS, J., and LANE, J.

MEMORANDUM BY LANE, J.:                           **FILED: JULY 8, 2025**

Brian Travell Thurmon ("Thurmon") appeals from the order denying his petition to enforce the terms of his 2010 plea agreement, which sought to bar application of the Pennsylvania Sex Offender Registration and Notification Act[1] ("SORNA") to him.  We affirm.

A discussion of the underlying facts is not necessary for our review,[2] although we note that Thurmon committed the offenses in 2007.  On August 25, 2010, Thurmon pleaded guilty to involuntary deviate sexual intercourse

---

[1] 42 Pa.C.S.A. §§ 9799.10-9799.75.

[2] In any event, this Court has summarized the facts in Thurman's two prior appeals.  ***See Commonwealth v. Thurmon***, 158 A.3d 172 (unpublished memorandum) (Pa. Super. 2016) (affirming the judgment of sentence); ***see also Commonwealth v. Thurmon***, 996 A.2d 558 (unpublished memorandum) (Pa. Super. 2010) (affirming denial of Thurmon's motion to dismiss the charges on double jeopardy grounds).

("IDSI"), conspiracy to commit IDSI, and burglary.[3] Neither the written plea agreement nor the plea hearing proceedings referred to any requirement to comply with the then-in effect Megan's Law III.[4] Nevertheless, we note that Thurmon's IDSI conviction carried a requirement to register for life.

On November 17, 2010, the trial court imposed an aggregate sentence of nine and one-half to nineteen years' imprisonment, followed by five years' probation. Thurmon filed a notice of appeal, and on September 8, 2016, this Court affirmed his judgment of sentence.

At this juncture, we observe that in the interim of the above procedural history, Megan's Law III expired, and the Pennsylvania Legislature enacted the current version of the Sex Offender Registration and Notification Act ("SORNA II") in 2012. As Thurmon committed his crime before 2012, Subchapter I of SORNA II applies to him,[5] and his IDSI conviction triggers lifetime registration.[6]

Thurmon was paroled in 2020 and informed of his SORNA II registration requirements. On August 18, 2023, Thurmon filed the underlying, counseled "Petition for Enforcement of Plea Agreement and/or For Vacation of Any

---

[3] *See* 18 Pa.C.S.A. §§ 3123(a)(1), 903(c), 3502(a).

[4] *See* 42 Pa.C.S.A. §§ 9791-9799.9 (*expired*).

[5] *See* 42 Pa.C.S.A. § 9799.52(1).

[6] *See* 42 Pa.C.S.A. § 9799.55(b)(2)(i)(A).

Obligation to Comply with Any SORNA Registration/Reporting Requirements"
("Petition for Enforcement of Plea Agreement"). First, he averred that because
the plea agreement placed on the record made no mention of Megan's Law III
registration requirements, and his counsel never informed him of any such
requirement, the imposition of SORNA II registration violated his due process
rights. Thurmon acknowledged the "pronouncement" in **Commonwealth v.
Kerns**, 220 A.3d 607 (Pa. Super. 2019) — that where existing law requires
sexual offender registration, such registration is an implied term of any plea
agreement, and the defendant may avoid the registration only if the plea
agreement contains an express provision for non-registration. Petition for
Enforcement of Plea Agreement, 8/18/23, at 14. Nevertheless, Thurmon
argued this statement was dictum and not controlling. Instead, Thurmon
reasoned, the trial court should apply the principle in **Commonwealth v.
Hainesworth**, 82 A.3d 444 (Pa. Super. 2013) (*en banc*), that "in determining
whether a particular plea agreement has been breached, we look to 'what the
parties . . . reasonably understood to be the terms of the agreement.'" **Id**. at
11.

Second, Thurmon relied on the Pennsylvania Supreme Court's then-in
effect first decision in **Commonwealth v. Torsilieri**, 232 A.3d 567 (Pa. 2020)
("**Torsilieri I**"), *rev'd*, 316 A.3d 77 (Pa. 2024) ("**Torsilieri II**"), in arguing
the SORNA II registration requirements violated his constitutional right to
privacy and reputation. Briefly, **Torsilieri I** reviewed whether a provision in

Subchapter H[7] of SORNA II, which stated "[s]exual offenders pose a high risk of committing additional sexual offenses," was an unconstitutional irrebuttable presumption that violated one's right to reputation. *Torsilieri I*, 232 A.3d at 585. The trial court held it did. *See id*. at 572. The Pennsylvania Supreme Court vacated this order and remanded for further development of the record. *See id*. at 586.

The Commonwealth filed a response, and the trial court denied Thurmon's petition on June 24, 2024. Thurmon filed a timely notice of appeal, and he and the trial court have complied with Pa.R.A.P. 1925.

Thurmon presents two issues for our review:

1. Did the [trial] court err in concluding that [Thurmon's] plea bargain contained a Megan's Law/SORNA reporting/ registration requirement when such a requirement was never made a part of the plea agreement or referenced in any way during plea proceedings?

2. Were [Thurmon's] constitutional rights to privacy and reputation unconstitutionally abridged by automatically imposing a SORNA reporting and registration requirement upon him as a result of entering a guilty plea without prior notice and while permitting no opportunity to refute the premise that he posed a high risk of reoffending?

Thurmon's Brief at 3 (unnecessary capitalization omitted).[8]

---

[7] Subchapter H applies to individuals convicted of sexually violent offenses committed on or after December 20, 2012. *See* 42 Pa.C.S.A. § 9799.11(c).

[8] Throughout his brief, Thurmon incorrectly refers to the trial court as the "PCRA court." *See* 42 Pa.C.S.A. §§ 9541-9546 (Post Conviction Relief Act) ("PCRA"). Nevertheless, elsewhere in his brief, Thurmon properly points out
*(Footnote Continued Next Page)*

In his first issue, Thurmon claims the trial court erred in finding that Megan's Law III registration was an implied term of his plea bargain and thus denying his petition to enforce his plea agreement. As noted above, "a collateral petition to enforce a plea agreement is regularly treated . . . under the contractual enforcement theory of specific performance." *Kerns*, 220 A.3d at 611–12. "Contract interpretation is a question of law, so '[o]ur standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary.'" *Id*. at 612 (citation omitted).

"The terms of plea agreements are not limited to the withdrawal of charges, or the length of a sentence. Parties may agree to — and seek enforcement of — terms that fall outside these areas." *Id*. (citation omitted).

> "[T]he convicted criminal is entitled to the benefit of his bargain through specific performance of the terms of the plea agreement. Thus, a court must determine whether an alleged term is part of the parties' plea agreement. If the answer to that inquiry is affirmative, then the convicted criminal is entitled to specific performance of the term."

*Id*. at 613 (citation omitted).

This Court has stated:

> "In determining whether a particular plea agreement has been breached, we look to 'what the parties to this plea agreement reasonably understood to be the terms of the agreement.'" Such

---

that "a collateral petition to enforce a plea agreement is regularly treated as outside the ambit of the PCRA and under the contractual enforcement theory of specific performance." Thurmon's Brief at 9 (*quoting* **Kerns**, 220 A.3d at 611–12); **see also Commonwealth v. Lacombe** 234 A.3d 602, 618 (Pa. 2020) (declining "to find the PCRA, or any other procedural mechanism, is the exclusive method for challenging sexual offender registration statutes").

a determination is made "based on the totality of the surrounding circumstances," and "[a]ny ambiguities in the terms of the plea agreement will be construed against the [Commonwealth]."

*Hainesworth*, 82 A.3d at 447 (citations omitted). "As in all contracts: 'The laws in force at the time the parties enter into a contract are merged with the other obligations [which] are specifically set forth in the agreement.'" *Kerns*, 220 A.3d at 613 (citation omitted).

We now review in detail the decisions in *Hainesworth* and *Kerns*, which Thurmon continues to rely on in this appeal. In *Hainesworth*, the defendant entered a negotiated guilty plea, in 2009, to various counts of statutory sexual assault, indecent assault, and criminal use of a communication facility. *Hainesworth*, 82 A.3d at 445. Under the then-in effect Megan's Law, none of these offenses required registration, and "[t]his fact was acknowledged on the record during [the defendant's] plea colloquy." *Id*. at 446. Pursuant to the plea agreement, the Commonwealth withdrew additional charges of aggravated indecent assault, which did trigger lifetime registration. *See id*. At the plea hearing, the trial court asked, "Is this Megan's Law?," and the Commonwealth responded in the negative. *Id*. at 447. After the Commonwealth stated the negotiated sentencing terms, the trial court again asked, "These are felony sexual assault and they're not Megan's Law?" *Id*. at 447-48. The Commonwealth explained it was moving to dismiss the aggravated indecent assault counts, and the remaining statutory sexual assault counts were not Megan's Law II offenses. *See id*. at

448. In light of his pleas, the defendant did not register under Megan's Law II. *See id*. at 446.

Three years later, however, SORNA II came into effect, and the defendant's indecent assault conviction now carried a twenty-five year-registration requirement. *See Hainesworth*, 82 A.3d at 446. The defendant filed a motion seeking, ultimately, to avoid the SORNA II registration requirements. *See id*. The trial court granted relief, finding that application of SORNA II to the defendant would violate the terms of the negotiated plea agreement and his due process rights. *See id*. at 446-47. The Commonwealth appealed to this Court. *See id*. at 447.

On review, a Superior Court *en banc* panel affirmed the trial court's decision. *See id*. at 451. This Court reasoned:

> The trial court and [the defendant] were assured no less than twice by the Commonwealth that the plea did not obligate [the defendant] to register as a sex offender. Moreover, these statements were made as part of the Commonwealth's recitation of the terms of the plea agreement, which were laid out carefully on the record. It is unambiguous from the record that both parties . . . and the trial court[] understood that a registration requirement was not included as a term of [the] plea agreement.
>
> Indeed, the plea agreement appears to have been precisely structured so that [the defendant] would not be subjected to a registration requirement. [The defendant] was initially charged with ten counts. Pursuant to the plea agreement, three counts were withdrawn: both counts of aggravated indecent assault (a Megan's Law offense), and one count of criminal use of a communication facility (a non-Megan's Law offense). Thus, nearly all of the withdrawn counts were Megan's Law offenses. Moreover, it is significant that the plea agreement included one count of criminal use of a communication facility. Unlike this charge, every count of aggravated indecent assault was withdrawn. In other

words, the Commonwealth withdrew every single count of only one crime, and that crime was the Megan's Law offense.

*Id*. at 448. This Court "conclude[d] that the parties . . . entered into a plea bargain that contained a negotiated term that [the defendant] did not have to register as a sex offender. As such, it was not error for the trial court to order specific enforcement of that bargain." *Id*. at 450.

Six years later, this Court issued a decision in *Kerns*. In that case, the Commonwealth charged the defendant with IDSI, sexual assault, rape, aggravated indecent assault, and indecent assault. *See Kerns*, 220 A.3d at 609. In 2001, Kerns entered an open guilty plea to one count of IDSI. *See id*. "The written plea colloquy contain[ed] no provision regarding sex offender registration and SVP classification." *Id*. at 614. However, "[a]t the plea hearing, the [trial] court announced that [the defendant] would undergo [a sexually violent predator ("SVP")] evaluation . . . pursuant to Megan's Law II, and a possible hearing on whether [the defendant] should be classified as" an SVP. *Id*. at 610. Subsequently, the trial court found he was an SVP "and explained to him that he was subject to lifetime sex offender registration under Megan's Law II." *Id*.

Almost sixteen years later, the defendant filed a *pro se* petition to vacate his sentence due to an alleged breach of his plea agreement. *See Kerns*, 220 A.3d at 611. The trial court denied relief, and the defendant filed an appeal to this Court. *See id*. He argued: (1) "the court and the Commonwealth breached the plea agreement because he is subject to sex offender

registration when the possibility of sex offender registration was not an express term of his written or oral plea colloquies;" and (2) both his SVP designation and "the imposition of the registration requirements[] exceeded his bargained-for exchange with the Commonwealth." *Id*. The defendant did not seek withdrawal of his plea, but rather enforcement of "the plea agreement as written, because it [had] no term in it about sex offender registration and SVP designation." *Id*.

This Court affirmed the denial of relief. *See Kerns*, 220 A.3d at 616. We reviewed *Hainesworth*, but concluded that in *Kerns*:

> Nothing in the certified record indicates that [the defendant's] guilty plea rested on an express promise or agreement by the Commonwealth for non-registration. To the contrary, the record in this case makes clear [the defendant's] sex-offender registration was a term contemplated and included in [his] plea agreement. [The defendant] cannot now isolate the plea "*as written*," when the totality of the circumstances shows [he] entered his guilty plea in 2001, to a sex offense reportable under Megan's Law, with the definite understanding that he was subject to lifetime registration as a sex offender. . . .

*Id*. at 614-15 (citations omitted and emphasis in original). In announcing the disposition, the *Kerns* Court "further [held] that, where existing law requires sex-offender registration for the offense(s) at issue, sex-offender registration is an implied term of any plea agreement; in order to eliminate sex-offender registration, the plea agreement must contain an express provision for ***non-registration***." *Id*. at 616 (emphasis in original).

In the instant appeal, Thurmon argues the trial court erred in denying his petition to enforce his plea agreement. Thurmon claims that his "plea

- 9 -

agreement, as read into open court and acknowledged by [him], did not include any form of Megan's Law registration requirement." Thurmon's Brief at 8. Thurmon also contends he first learned of the registration requirement "[o]nly after [he] served his time and was approaching parole[.]" *Id*. He reasons this Court should interpret the failure to include this material term to mean the parties excluded the term, or at "the very least, [to] create[ an] ambiguity" that should "be construed in [his] favor." *Id*. at 10-11. Thurmon thus seeks "to have the explicit terms of his plea agreement enforced, and . . . to bar the *ex post facto* inclusion of an incredibly onerous detriment to his bargained for exchange." *Id*. at 8.

Thurmon also challenges the statement in **Kerns**, "We further hold that, where existing law requires sex-offender registration for the offense(s) at issue, sex-offender registration is an implied term of any plea agreement; in order to eliminate sex-offender registration, the plea agreement must contain an express provision for non-registration." Thurmon's Brief at 12 (*quoting* **Kerns**, 220 A.3d at 616). Thurmon asserts this statement was dictum, because at the plea hearing in **Kerns**, the trial court ordered an SVP assessment, "the proceedings [thus] acknowledged the applicability of Megan's Law[,] and the defendant clearly had awareness that pleading guilty brought [a] registration requirement." *Id*. at 14. Thurmon claims the **Kerns** Court's "broad overarching statement went well beyond the facts" and thus "was not a necessary part of the rationale." *Id*. at 13. Thurmon alleges that

in contrast, in this case, "as acknowledged by the trial court, there was simply pure silence and a failure to acknowledge the applicability of" Megan's Law III. *Id*. at 15. Thurmon thus concludes "[t]he failure to include the [registration] term [should] be construed as a finding that it was omitted." *Id*.

In denying relief, the trial court found, pursuant to *Kerns*, there was no breach of the plea agreement because "non-registration was not discussed or specifically made to be an express part of the deal between him and the Commonwealth." Trial Court Opinion, 6/26/24, at 5. Contrary to Thurmon's argument, the court distinguished *Hainesworth*, reasoning that here, there was

> no indication in [his] plea agreement or in the record indicated that non-registration was an express condition of his plea bargain. There was no discussion surrounding the issue, and the plea agreement did not involve the withdrawal of Megan's Law offenses as was the case in *Hainesworth*. It is true that plea agreements are analyzed under contract law[,]that [Thurmon] is entitled to specific performance of the terms . . . negotiated in the agreement[, and] that ambiguities in a plea agreement are construed in favor of the [d]efendant. [However, here] there [was] no ambiguity in the plea agreement or the record[.] The record is simply completely silent on the issue of registration requirements.

*Id*. at 405.

Reviewing Thurmon's claim of a breach of his plea agreement *de novo*, we conclude that no relief is due. *See Kerns*, 220 A.3d at 612. First, we reiterate *Kerns*' statements, that "[t]he laws in force at the time the parties enter into a contract are merged with the other obligations [which] are specifically set forth in the agreement," and "[w]hen sex-offender registration

- 11 -

statutes are in force and applicable to the offense(s) at issue, sex-offender registration is an implied term of the plea bargain." *Id*. at 613.

Next, we reject Thurmon's characterization of **Kerns**' additional statement — "We further hold that, where existing law requires sex-offender registration for the offense(s) at issue, sex-offender registration is an implied term of any plea agreement; in order to eliminate sex-offender registration, the plea agreement must contain an express provision for ***non-registration***" — as dictum. **Id**. Thurmon's rationale is that in **Kerns**, at the plea hearing the trial court acknowledged an upcoming SVP assessment. However, this mere reference to an SVP assessment did not equate to an express agreement between the parties that the defendant would not register. Indeed, the **Kerns** Court stated, "Nothing in the certified record indicates that [the defendant's] guilty plea rested on an express promise or agreement by the Commonwealth for non-registration." **Kerns**, 220 A.3d at 615.

Accordingly, we determine the **Kerns** holding is binding on this appeal — again, that "where existing law requires sex-offender registration for the offense(s) at issue, sex-offender registration is an implied term of any plea agreement; in order to eliminate sex-offender registration, the plea agreement must contain an express provision for ***non-registration***." **Id**. at 616 (emphasis in original). It is not disputed that here, Thurmon's plea agreement had no provision, express or otherwise, that Megan's Law III registration would not apply to him. Accordingly, we conclude that Megan's

Law III sexual offender registration was an implied term of the plea. ***See id***. No relief is due on Thurmon's first issue.

In his second issue, Thurmon contends the imposition of SORNA II registration requirements on him violates his constitutional rights to privacy and reputation. He presents several arguments in support, which we address *seriatim*. First, Thurmon again cites the trial court's declaration, in ***Torsilieri I***, that SORNA abridges one's right to reputation; this was his claim in his petition to enforce the plea agreement.

In its opinion, however, the trial court pointed out the Pennsylvania Supreme Court has issued a second decision, ***Torsilieri II***, following remand for an evidentiary record, which reversed the trial court's declaration that Subchapter H is unconstitutional. The ***Torsilieri II*** Court reviewed section 9799.11(a)(4)'s provision, "that individuals who commit sexual offenses pose a high risk of committing additional sexual offenses[,]" and held the defendant "failed to meet his heavy burden to demonstrate that the irrebuttable presumption . . . was constitutionally infirm." ***Torsilieri II***, 316 A.3d at 99.

We agree that Thurmon is not entitled to relief. First, as the trial court discussed, our Supreme Court has reversed its initial decision in ***Torsilieri I***. Despite the trial court opinion's clear discussion on this point, Thurmon fails to acknowledge, let alone address, ***Torsilieri II*** in his appellate brief. Additionally, ***Torsilieri I*** and ***Torsilieri II*** addressed constitutional challenges

to Subchapter H only, and Thurmon is subject to Subchapter I. Thus, neither *Torsilieri I* and *Torsilieri II* offer relief to Thurmon.

Next, Thurmon avers he "was never apprised of the fact that the entry of a guilty plea would [trigger] reporting/registration obligations and that he would be without an opportunity to challenge or negate the premise underlying the listing of his name on [a sexual offender] registry." Thurmon's Brief at 18. Thus, he reasons, he "received no notice of the impending infringement of his reputational and privacy rights," in violation of his due process rights. *Id*.

We determine no relief is due. As stated above,

"The laws in force at the time the parties enter into a contract are merged with the other obligations [which] are specifically set forth in the agreement." When sex-offender registration statutes are in force and applicable to the offense(s) at issue, sex-offender registration is an implied term of the plea bargain[.]

*Kerns*, 220 A.3d at 613 (citations omitted). Under these principles, Thurmon's unawareness of the law does not amount to a due process violation.

For the foregoing reasons, we determine the trial court did not err in denying Thurmon's petition to, ultimately, seek avoidance of his SORNA II registration requirements. We thus affirm the order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 07/08/2025