J-A11030-19

2019 PA Super 240

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SCOTT ALLEN KILEY | : | |
| | : | |
| Appellant | : | No. 1278 MDA 2018 |

Appeal from the Judgment of Sentence Entered June 5, 2018
In the Court of Common Pleas of Juniata County Criminal Division at
No(s): CP-34-CR-0000128-2017

BEFORE: BOWES, J., OLSON, J., and STABILE, J.

OPINION BY OLSON, J.: **FILED AUGUST 09, 2019**

Appellant, Scott Allen Kiley, appeals from the judgment of sentence entered on June 5, 2018, in the Juniata County Court of Common Pleas. We vacate the judgment of sentence and remand for a new sentencing hearing consistent with this opinion.

The trial court set forth the relevant factual and procedural history as follows.

On March 12, 2018, [Appellant] pled guilty to one count each of: operating a methamphetamine lab[],[1] [manufacturing a

---

[1] 35 P.S. § 780-113.4(a)(1).

controlled substance],[2] risking catastrophe[],[3] and possession of a precursor substance with intent to manufacture[].[4] Other than the Commonwealth agreeing that the weight of the methamphetamine was 50-100 grams to lower [Appellant's] offense gravity score to [ten], [Appellant] entered an open guilty plea. On June 5, 2018, [Appellant] received three concurrent sentences[:] [four to ten] years for [manufacturing a controlled substance], [two to ten] years for operating a methamphetamine lab, and [one to two] years for possession of precursor substances with intent to manufacture[.] [Appellant also received] one consecutive sentence of [one to two] years for risking catastrophe, for a total sentence of [five to] 12 years.

[Appellant] received credit [for time served] from June 12, 2017 to June 5, 2018. [At Appellant's sentencing hearing,] [a]fter [the court imposed sentence], [Appellant] stated he thought the plea agreement he signed was for [three to six] years. [T]he court and the Attorney General reviewed the written plea agreement with [Appellant], noting that the document did not mention [three to six] years, only that the maximum sentence was 44 years. The Attorney General outlined the plea agreement again.

...

At [Appellant's] guilty plea hearing on March 12, 2018, the Attorney General stated, and the court reiterated, that this was an open guilty plea and the only agreement was to a weight of 50-100 grams of methamphetamine. [Appellant] was colloquyed and acknowledged that he had read and understood the guilty plea documents. During [Appellant's] sentencing hearing, the Attorney General explained [Appellant's] maximum sentence and reiterated the only agreement was the methamphetamine weight.

---

[2] 35 P.S. § 780-113(a)(30). This charge is usually referred to as possession with intent to deliver and abbreviated "PWID." In this case, based on our review of the record, it is clear that Appellant's plea was based entirely on his manufacture of methamphetamine in his home, for personal use. There was no evidence of delivery or intent to deliver, thus, for clarity, we refer to this count as "manufacturing a controlled substance" throughout this opinion.

[3] 18 Pa.C.S.A. § 3302(b).

[4] 35 P.S. § 780-113.1(a)(3).

In announcing the sentence, the court noted each sentence was within the standard range and that the court had considered [Appellant's] counseling. [Appellant relied on an email from the Deputy Attorney General to support his claim that the plea agreement entailed only a three to six year sentence.] The email [to which Appellant referred only discussed] the [manufacturing a controlled substance] charge having a [possible] minimum sentence of 36-48 months. As the court imposed a [four to ten] year sentence on this charge, [the sentence fell within] this guideline []. Therefore, [Appellant's] total sentence of [five to] 12 years is a standard range sentence that meets the parameters of the guilty plea.

Trial Court Opinion, 9/18/2018, at 1-3 (unnecessary capitalization and internal citations removed).[5]

Appellant presents three issues for our review:

1. Whether the sentence imposed was outside the scope of the plea agreement?[6]

2. Should the sentence for risking a catastrophe have merged with another count set forth in the information?

---

[5] Appellant filed a timely post-sentence motion on June 15, 2018, which the trial court denied by order dated June 25, 2018, and entered on the docket on June 27, 2018. Appellant filed a supplemental post-sentence motion on July 9, 2018. Based on the record, it does not appear that Appellant obtained leave of court to file a supplemental post-sentence motion. As such, the supplemental motion was untimely filed. *See* Pa.R.Crim.P. 720. However, Appellant timely filed his notice of appeal on July 24, 2018. The trial court never ruled on Appellant's untimely supplemental post-sentence motion. On July 31, 2018, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied on August 15, 2018. The trial court filed its 1925(a) opinion on September 19, 2018.

[6] Appellant's first issue was not raised in his original, timely, post-sentence motion. Appellant, however, questioned whether his sentence was outside the scope of his plea agreement at his June 5, 2018 sentencing hearing. Thus, we decline to find the issue waived for appellate review.

- 3 -

3. Did the consecutive sentences imposed for the manufacture of a controlled substance and risking a catastrophe raise the aggregate sentence to an unreasonably excessive level in light of the conduct at issue in this case and Appellant's mitigating circumstances?

Appellant's Brief at 7 (capitalization removed).

In his first issue, Appellant argues that the sentence imposed by the sentencing court exceeds the scope of his negotiated plea agreement. In assessing whether a plea agreement has been breached, we consider what the parties to the agreement reasonably understood the terms to be. ***Commonwealth v. Hainesworth***, 82 A.3d 444, 447 (Pa. Super. 2013). In making this determination, we look at the totality of the circumstances and construe any ambiguities in the agreement against the Commonwealth. ***Id.***

Appellant contends that, as he understood it, his plea agreement included a minimum sentence between 36 and 48 months, and the 60-month minimum sentence he received represented a breach of that agreement. Appellant bases this contention on a November 28, 2017 email from Deputy Attorney General Bob Smulktis to Appellant's counsel. The email states, in relevant part, the following: "[f]or [Appellant] I received approval for a plea to all charges, with the OGS [(offense gravity score)] on the [manufacturing a controlled substance] charge being reduced to a [ten], with the guideline range being 36-48 months. This is a one year reduction from the original guidelines." Appellant's Concise Statement, 8/15/2018, at Exhibit "A."

Appellant's contention that he understood his plea agreement to include a term that called for a minimum aggregate sentence between 36 and 48 months' incarceration is belied by the record. The plea agreement that Appellant signed does not include any reference to an aggregate minimum sentence between 36 and 48 months. The agreement notes that the maximum penalty for the charges to which Appellant pled is 44 years' incarceration and/or a $255,000.00 fine. The "additional terms of this plea agreement" portion of the form is left blank. Appellant's Plea Agreement, 3/12/2018, at 1-4. Appellant relies on an email that makes no offer of a proposed **aggregate** sentence. The email simply confirmed that the Commonwealth would stipulate to a quantity of methamphetamine of 50 to 100 grams in order to reduce the offense gravity score of the manufacturing a controlled substance charge. Moreover, at the hearing on Appellant's guilty plea, the following exchange took place between Deputy Attorney General Smulktis, the court, Appellant's counsel, Ralph A. Germak, Esquire, and Appellant.

> **Mr. Smulktis**: There is a preliminary agreement, Your Honor, that is that Count 3, the Commonwealth and [d]efense [c]ounsel have agreed to the—essentially, the weight would be between 50 and 100 grams of methamphetamine, which would reduce the offense gravity score to a [ten] from its previous [total] of 11.
>
> **The Court**: Okay.
>
> **Mr. Smulktis**: But beyond that, that's the extent of the agreement in this case.
>
> **The Court**: All right.

- 5 -

**Mr. Germak**: Your Honor, we did prepare a plea agreement; and it's in writing, and we have it for Your Honor. The recitation made by the Attorney General's Office is correct. There is a reduction in the amount of volume of liquid—well, material in Count 3, and we are asking the [c]ourt for a [p]re-[s]entence [i]nvestigation [r]eport so that we'll be better prepared to make our legal arguments at sentencing—prior to sentencing.

...

**The Court**: Mr. Kiley, your attorney has handed me a plea colloquy that indicates you are, in essence, tendering an open plea to all the counts contained in the [i]nformation with the understanding that on Count 3, the quantity will be decreased to 50 to 100 grams. You understand[] that, sir?

**[Appellant]**: Yes.

N.T., 3/12/2018, at 2-3. Appellant entered an open plea and could not have reasonably understood the plea agreement with the Commonwealth to include a minimum aggregate sentence of 36 to 48 months' incarceration. Appellant's first claim fails.

In his second claim, Appellant contends that his conviction for risking a catastrophe should have merged with one of his other charges for sentencing purposes. Such a claim raises a challenge to the legality of his sentence. *Commonwealth v. Nero*, 58 A.3d 802, 806 (Pa. Super. 2012). Therefore, our standard of review is *de novo* and our scope of review is plenary. *Id.*

Appellant essentially argues that manufacturing methamphetamine inherently risks a catastrophe and, therefore, the crimes should merge for sentencing. Merger of sentences is controlled by 42. Pa.C.S.A. § 9765, which provides,

- 6 -

[n]o crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act **and** all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A § 9765 (emphasis added). It is undisputed that all of the charges to which Appellant pled guilty arose from a single criminal act, *i.e.*, Appellant's production of methamphetamine in his home. However, "there is no merger if each offense requires proof of an element the other does not." *Commonwealth v. Quintua*, 56 A.3d 399, 401 (Pa. Super. 2012). Thus, we must determine whether all of the statutory elements of risking a catastrophe are included in any of the other charges to which Appellant pled guilty, or *vice versa*.

Risking a catastrophe is defined as follows. "A person is guilty of a felony of the third degree if he **recklessly creates a risk of catastrophe** in the **employment of** fire, explosives, or other dangerous means listed in subsection (a) of this section." 18 Pa.C.S.A. § 3302(b) (emphasis added). The "other dangerous means" listed under subsection (a) include, "explosion, fire, flood, avalanche, collapse of building, release of poison gas, radioactive material or other harmful or destructive force or substance, or by **any other means of causing potentially widespread injury or damage**[.]" 18 Pa.C.S.A § 3302(a) (emphasis added).

Count I of the information, possessing precursor substances with intent to manufacture, criminalizes, "[p]ossessing phenylpropanolamine, phenyl

acetone, methylamine, ammonium sulfate, ammonium nitrate, phenyl acetic acid or a precursor substance with intent to unlawfully manufacture a controlled substance." 35 P.S. § 780-113.1(a)(3). Clearly, this charge does not contain all of the elements of risking a catastrophe. Specifically, risking a catastrophe includes the element of actual **employment** of dangerous means—in this case, chemicals—not just their possession. Furthermore, possessing precursor substances includes the element of "intent to unlawfully manufacture a controlled substance," which risking a catastrophe does not. Therefore, these charges do not merge for sentencing.

Similarly, count III of the information, manufacturing a controlled substance, prohibits "[t]he manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance by a person not registered under the act[.]" 35 P.S. § 780-113(a)(30). Manufacturing a controlled substance certainly does not include all of the elements of risking a catastrophe. Specifically, it does not include the employment of dangerous means with the potential to cause widespread injury or damage. Moreover, risking a catastrophe does not include the element of manufacturing a controlled substance. Thus, these charges do not merge for sentencing.

Count IV of the information, operating a methamphetamine laboratory, is defined as follows,

> A person commits the offense of operating a methamphetamine laboratory if the person **knowingly causes a chemical reaction** involving ephedrine, pseudoephedrine or phenylpropanolamine, or any other precursor or reagent substance under section 13.1[]

**for the purpose of manufacturing methamphetamine** or preparing a precursor or reagent substance for the manufacture of methamphetamine.

35 Pa. C.S.A § 780-113.4(a)(1) (emphasis added). Appellant's argument applies best to this charge, however, it is ultimately unavailing. Risking a catastrophe does not include the element, "for the purpose of manufacturing methamphetamine," and operating a methamphetamine laboratory does not include the element of risking widespread injury or damage. While it may be true that the chemical reaction involved in manufacturing methamphetamine is potentially dangerous, and perhaps presents a risk of catastrophe, that risk is not the conduct that is criminalized by 35 P.S. § 780-113.4(a)(1). Therefore, Appellant's second claim, that risking a catastrophe should have merged with one of his other charges, fails.

However, we find that Appellant is, in fact, subject to an illegal sentence under the doctrine of merger. Although risking a catastrophe does not merge with any other offense to which Appellant pled guilty, manufacturing a controlled substance and operating a methamphetamine laboratory should have merged for sentencing in this case.[7] Again, manufacturing a controlled substance proscribes, "[t]he manufacture, delivery, or possession with intent

---

[7] Appellant did not raise or brief this issue, but because it pertains to the legality of his sentence, this issue cannot be waived and it may be addressed by the Court *sua sponte*. **See Commonwealth v. Kelly**, 78 A.3d 1136, 1145 (Pa. Super. 2013).

to manufacture or deliver a controlled substance by a person not registered under the act[.]" 35 P.S. § 780-113(a)(30). Appellant's guilty plea to this charge was based solely on his **manufacture** of a controlled substance, namely, methamphetamine.[8]  Operating a methamphetamine laboratory, although more specific than § 780-113(a)(30), also proscribes manufacturing methamphetamine.  Based on the facts of this case, in sum and substance, manufacturing a controlled substance contains all of the elements of operating a methamphetamine laboratory.  Appellant's convictions arose from a single criminal act and manufacturing a controlled substance contains all of the elements of operating a methamphetamine lab; therefore, these offenses merge for sentencing purposes.

Pursuant to 42. Pa.C.S.A. § 9765, where two charges merge, the appellant may only be sentenced on the higher graded offense.  Here, operating a methamphetamine laboratory is the higher graded offense.  *See* 18 Pa.C.S.A. § 106(b)(5). The trial court sentenced Appellant, *inter alia*, to concurrent terms of four to ten years for manufacturing a controlled substance

---

[8] Based on the criminal complaint and the notes of testimony from both the plea and sentencing hearings, it is clear that Appellant was addicted to methamphetamine and manufactured it at home using a "one-pot" method for his personal use.  In fact, the Commonwealth stipulated to a lesser weight of the methamphetamine for the plea deal to reflect the fact that the bulk of what was confiscated from Appellant was an unusable solvent, which is a by-product of the "one-pot" method.  Appellant signed a plea agreement that refers to this charge as "PWI to Mfg[.]"  Appellant's Plea Agreement, 3/12/2018, at 1.

and two to ten years for operating a methamphetamine laboratory. As these two charges merge for sentencing purposes, and because Appellant must be sentenced on the higher graded offense-operating a methamphetamine laboratory-we have upset the trial court's sentencing scheme. Accordingly, we remand for re-sentencing consistent with this opinion. As such, we will not address Appellant's third claim, which challenges the discretionary aspects of his sentence.

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/9/2019