J-A05002-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| STEPHON LAVAUGHN HARDIK | : | |
| | : | |
| Appellant | : | No. 16 WDA 2019 |

Appeal from the Judgment of Sentence Entered December 4, 2018
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0003527-2017

BEFORE:   BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    FILED MAY 13, 2020

Appellant, Stephon Lavaughn Hardik, appeals from the judgment of sentence of an aggregate term of 54-108 months' incarceration, followed by 7 years' probation, imposed following his conviction for multiple drug-related offenses related to his manufacturing of methamphetamines.   Appellant contests the sufficiency of the evidence supporting his convictions, as well as the decision by the trial court to admit evidence of a presumptive drug test of a substance obtained during a controlled buy.   He also presents several challenges to his sentence and, relatedly, in a joint motion with the Commonwealth, he requests that we remand for resentencing.   After careful review, we affirm with respect to Appellant's sufficiency and evidentiary

_____

[*] Retired Senior Judge assigned to the Superior Court.

issues.  However, we must vacate Appellant's judgment of sentence and remand for resentencing.

The trial court summarized the procedural history of this case and the facts adduced at Appellant's jury trial as follows:

> In early 2017, the Pennsylvania Office of the Attorney General ("AG") received information from a source that methamphetamine was being manufactured at Appellant's residence ... in Erie, Pennsylvania.  The AG's office and local law enforcement began conducting surveillance and spot checks on the property.  During the surveillance, vehicles were observed pulling up to the residence, picking up Appellant, leaving the property, and returning with Appellant approximately two to four minutes later.
>
> On or about July 23, 2017, the AG's office arranged for a controlled buy between Appellant and a confidential informant ("CI"), ["MSB"].  That day, [MSB] contacted Appellant by phone and asked to purchase methamphetamine, telling Appellant to meet her in the McDonald's parking lot.  Law enforcement agents followed [MSB] to McDonald's and parked close by.  Law enforcement observed Appellant arrive by vehicle, park beside [MSB], exit his vehicle, enter [MSB]'s vehicle, exit [her] vehicle, and leave the parking lot.  Agents from the AG's office followed [MSB] back to the AG's office where she handed over a baggie containing a "white powdered chunk" that was field[-]tested and came up positive for the presumptive presence of methamphetamine.  Meanwhile, local law enforcement followed Appellant's vehicle[,] which returned back to [his] residence....
>
> On or about July 27, 2017, the AG's office secured a search warrant for Appellant's home....  Appellant and his girlfriend, [KW], were inside the home at the time the search warrant was executed.  Upon searching the garage, agents discovered a hidden sliding door and false rear wall.  The agents found [Richard] Grassi in the hidden room, which contained sleeping quarters, a small coffee table, and a closed circuit television monitor broadcasting a live stream of a security camera located inside a fence on the property.
>
> The AG special operations group, with assistance from the Pennsylvania State Police Clandestine Lab Team, conducted a

search of the premises. Multiple surveillance cameras were found in and around the residence. In the garage, agents found four suspected one-pot bottles and one suspected one-pot in a baggie; [prilled] ammonium nitrate…; three boxes and eighteen empty blister packs of pseudoephedrine cold medication; drain cleaner containing lye; empty lithium battery packages and strips of lithium; crushed camp fuel containers and a receipt for camp fuel; used coffee filters; tubing; a pipe cutter and pliers; an air purifying respirator; and two cell phones. In the attic of the residence, agents found Appellant's wallet and driver's license; clear liquid organic solvents; tubing; funnels; a gas can; a glass vase; a bottle containing muriatic acid; plastic pop bottles; used coffee filters; a receipt for allergy medication; [and] three cell phones. Two plastic containers containing suspected methamphetamine, marijuana, and glass smoking pipes were also located in the attic. In the basement, agents found a food processor; allergy medication; ammonium nitrate prills; containers of lye; a gas can; containers of tubing; used coffee filters; glassware and plasticware containing residue; glass pipes; small baggies; a funnel; a smoking bong; and pipe cutters, pliers[,] and vice grips[.] Plastic containers containing small white chunks of residue and a bag of marijuana [were] also found in the basement.[2]

> [2] The Commonwealth presented the testimony of Brett A. Bailor, a forensic scientist with the Erie Regional Crime Laboratory. Mr. Bailor was qualified as an expert witness without objection by Appellant. Mr. Bailor provided extensive testimony regarding the results of testing on the evidence recovered from Appellant's home. The test results revealed the presence of methamphetamine as well as other solvents and residue used in the manufacture of methamphetamine.

Appellant was arrested on-site. After he was placed in the back of the patrol car, Agent Heather Dunkle of the AG's office approached Appellant and asked if there were any safety concerns within the residence such as dangerous chemicals or active one-pots. Appellant first responded in the negative; however, upon receiving his [Miranda[1]] rights and Agent Dunkle informing him [that] items indicative of methamphetamine manufacturing had

_____

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

been seen inside the residence, Appellant admitted there was one active one-pot.

On October 11, 2018, after a trial by jury, Appellant was convicted of Operating a Methamphetamine Lab; Unlawful Delivery or Unlawful Manufacturing; Possession of Liquefied Ammonia Gas, Precursors and Chemicals; Possession (methamphetamine); and Possession of Drug Paraphernalia.[3]

> [3] 35 Pa.C.S.[] § 780-113.4(a)(1); 35 Pa.C.S.[] § 780-113(a)(30); 35 Pa.C.S.[] § 780-113.1(a)(3); 35 Pa.C.S.[] § 780-113(a)(16); and 35 Pa.C.S.[] § 780-113(a)(32), respectively. Count Four: Conspiracy—Manufacture, delivery, or possession with intent to manufacture or deliver, was withdrawn.

On December 4, 2018, Appellant was sentenced to an aggregate period of 54 months to 108 months of incarceration as follows:

> Count One—Operating a Methamphetamine Lab: 30 months to 60 months of incarceration, consecutive to any other state sentence currently being served.
>
> Count Two—Unlawful Delivery or Unlawful Manufacturing: [24] months to [48] months of incarceration, consecutive to Count One.
>
> Count Three—Possession of Liquefied Ammonia Gas/Precursors/Chemicals: 7 years of probation, consecutive to Count Two.
>
> Count Five—Possession (methamphetamine): Merged with Count One[.]
>
> Count Six—Possession of Drug Paraphernalia: Merged with Count One[.]

On December 14, 2018, Appellant filed a post-sentence motion seeking an arrest of judgment[,] ... a new trial[,] and a modification of the sentence. On December 17, 2018, the post-sentence motion was denied. On December 28, 2018, Appellant filed a Notice of Appeal. On January 2, 2019, the court directed the Appellant to file a [Pa.R.A.P.] 1925(b) [s]tatement ... within 21 days. On January 16, 2019, Appellant's new counsel filed a Motion for Extension of Time to allow him to review the trial transcripts before filing the [Rule 1925(b) statement]. On January

24, 2019, this court granted Appellant an extension of twenty-one (21) days from the filing of the transcripts.

On February 4, 2019, Appellant filed his [Rule 1925(b) statement].

Trial Court Opinion ("TCO"), 7/5/19, at 1-5 (some citations and footnotes omitted).

Appellant now presents the following questions for our review:

    I.    Whether or not the fact that Appellant's sentence was based on the wrong prior record score renders his sentence illegal requiring that his case be remanded to the trial court for resentencing that is consistent with guidelines that cor[re]spond with his accurate score?

    II.    Whether Appellant's convictions on count 1 and count 2 of the information should have merged for the purpose of sentencing?

    III.    Whether the trial court committed a reversible error when it admitted testimony about a narcotics identification test ("NIK test")?

    IV.    Whether or not the Commonwealth presented sufficient evidence to prove [A]ppellant's guilt beyond a reasonable doubt as to the convictions [at counts 1 and 2]?

Appellant's Brief at 3-4 (unnecessary capitalization omitted). For ease of disposition, we will address Appellant's claims in reverse order.

In Appellant's fourth question for our review, he asserts two distinct but related claims that the evidence was insufficient to support his convictions for 1) operating a methamphetamine lab ("OML"), 35 Pa.C.S. § 780-113.4; and 2) unlawfully manufacturing a controlled substance ("MCS"), 35 Pa.C.S. § 780-113(a)(30). Appellant asserts that the uncontradicted testimony of Mr. Grassi established that he was solely responsible for the methamphetamine

manufacturing operation discovered at Appellant's residence, thereby ostensibly rendering the evidence insufficient for both claims.

The trial court determined that Appellant waived these claims due to the vagueness with which he raised them in his Pa.R.A.P. 1925(b) statement. See TCO at 6. The Commonwealth explicitly adopted the trial court's reasoning for rejecting Appellant's sufficiency claims. See Commonwealth's Brief at 3. We agree.

In Appellant's Rule 1925(b) statement, he presented the following claim: "Appellant argues that the Commonwealth failed to present sufficient evidence to find [him] guilty beyond a reasonable doubt of the above[-]listed convictions." Appellant's Rule 1925(b) statement, 2/4/19, at 4 ¶ 1 (unnumbered pages). Rule 1925(b)(4)(ii) provides that a Rule 1925(b) statement "shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii) (emphasis added). Generally, if an appellant "wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal." Commonwealth v. Williams, 959 A.2d 1252, 1257 (Pa. Super. 2008) (quoting Commonwealth v. Flores, 921 A.2d 517, 522 (Pa. Super. 2007) (superseded by statute and overruled in part on other grounds) (emphasis omitted)). A failure to do so may result in waiver. Id.

Here, a jury convicted Appellant of six separate criminal offenses. As is plain from his Rule 1925(b) statement, Appellant challenged the sufficiency of all six offenses, but failed to specify a single element of any offense that had not been proven at trial. Moreover, the nature of Appellant's sufficiency claim—as now presented to this Court—is not at all obvious from the record below. Notably, although the trial court attempted to provide an alternative analysis on the merit of Appellant's claim(s) after initially finding waiver, it did not address Appellant's assertion that Mr. Grassi's testimony alone ostensibly established the insufficiency of the evidence. This is precisely why Rule 1925(b)(4)(ii) demands adequate specificity in a Rule 1925(b) statement. Accordingly, we conclude that Appellant waived his sufficiency claim(s) because of the vagueness of his Rule 1925(b) statement.

Even had Appellant not waived his sufficiency claims, we would deem them meritless. Our standard of review of sufficiency claims is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

As we must view the evidence in a light most favorable to the Commonwealth, we assume that the jury did not find Mr. Grassi's testimony credible, at least insofar as it tended to absolve Appellant. "It is a basic tenet of our system of jurisprudence that issues of credibility are properly left to the trier of fact for resolution." Commonwealth v. Whack, 393 A.2d 417, 419 (Pa. 1978). Moreover, there was ample evidence of Appellant's culpability for this crime,[2] including his own admission (after he was Mirandized) that a batch of methamphetamines was under production at the time of his arrest. See TCO at 3. Accordingly, even had Appellant not waived his sufficiency claims, we would deem them meritless.

In Appellant's third claim, he argues that the trial court committed reversible error by admitting evidence of the result of the NIK test conducted after the controlled buy that occurred on or about July 23, 2017. Appellant asserts that by testifying to the results of that test, Agent Nicholas VanDamia "was permitted to testify about a topic that is outside the general knowledge of a layperson." Appellant's Brief at 28. Appellant argues that there was no colloquy to establish Agent VanDamia's expertise, nor any evidence presented

---

[2] The trial court thoroughly summarized the evidence supporting Appellant's conviction for each offense in its Rule 1925(a) opinion, and concluded that the evidence was sufficient with respect to each offense. See TCO at 7-9 (detailing the evidence supporting Appellant's conviction for OML); id. at 9-10 (reviewing the evidence supporting Appellant's conviction for MCS). We would herein adopt the trial court's sufficiency analysis as our own.

- 8 -

regarding general acceptance of the NIK test.  Appellant further contends that by

> allowing the jury to hear this uncorroborated testimony, the [t]rial [c]ourt erroneously exposed the jury to unreliable evidence offered by a witness[] who had not been qualified as an expert competent to offer such evidence.  This error likely colored the jury's perception of Appellant and negatively affected their deliberations on the charges against him.

Id. at 29-30.

The trial court determined that this claim was also waived due to vagueness.  See TCO at 14.  Appellant presented this issue in his Rule 1925(b) statement as follows: "Appellant argues that the [t]rial [c]ourt erred and/or committed an abuse of discretion in denying … Appellant's objection to allowing Agent Nicholas VanDamia of the [AG]'s office to testify to the results of the NIK test following an alleged controlled buy from … Appellant to a confidential informant."  Appellant's Rule 1925(b) statement at 4 ¶ 1.  The trial court found this too vague because Appellant provided "no reference to why this was an error."  TCO at 14.  We agree with the trial court.  Appellant failed to provide any indication in his Rule 1925(b) statement as to why Agent VanDamia's testimony regarding the NIK test was legally inadmissible and, consequently, this issue was waived.

Moreover, when Appellant's trial counsel objected, he argued that the substance purchased during the controlled buy had only been field tested, and that no official testing had been conducted on the substance.  See N.T., 10/11/18, at 35-36.  Thus, Appellant appeared to challenge the result of the

- 9 -

NIK test at trial (although he presented no citation to any legal authority as to why such evidence was inadmissible). In Appellant's brief, however, he now alleges that Agent VanDamia was not qualified as an expert. These are substantively different claims. Thus, Appellant has also waived this claim for failing to present it in the first instance before the lower court. See Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

In any event, had Appellant not waived this claim, we would still deem it meritless, as we agree with the trial court that the admission of Agent VanDamia's testimony regarding the NIK test result was harmless error,[3] even assuming that testimony was inadmissible. As the trial court explained:

_____

[3] The harmless error standard has been defined by our Supreme Court as follows:

In the event of an erroneous admission of evidence, a verdict can still be sustained if the error was harmless. An error is harmless if it could not have contributed to the verdict, or stated conversely, an error cannot be harmless if there is a reasonable possibility the error might have contributed to the conviction. We have found harmless error where:

(1) the error did not prejudice the defendant or the prejudice was de minimis;

(2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or

(3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the

Assuming arguendo it was error to admit testimony about the NIK test, it was harmless error. First, the testimony offered regarding the NIK test was very limited. The Commonwealth clearly established the test was presumptive and no further lab tests confirmed the result. On cross-examination, Appellant freely questioned Agent VanDamia regarding the limitations of the NIK test, particularly regarding the fact that the test sometimes produced false positives. [N.T., 10/11/18, at] 39-40. Further, the Commonwealth elicited from Agent VanDamia that the real purpose of the NIK test was not to establish the substance obtained from the controlled buy was in fact methamphetamine but rather to build up information to permit the police to obtain a search warrant for Appellant's property. Appellant was never charged in connection with the controlled buy; Appellant was only charged as a result of the drugs and paraphernalia found at the residence. There was no prejudice to Appellant in the admission of the very brief testimony regarding the NIK test and Appellant's claim must be dismissed.

TCO at 16-17. We agree with the trial court. Whatever unfair prejudice resulted from the brief mention of the results of the NIK test was offset by further testimony regarding the limitations of the test. Moreover, we would add that the "properly admitted and uncontradicted" evidence of Appellant's guilt was overwhelming. Poplawski, 130 A.3d at 716. Thus, had Appellant not waived this claim, we would still conclude that any evidentiary error stemming from Agent VanDamia's testimony about the results of the NIK test was harmless.

In Appellant's second claim, he asserts that his sentences for OML and MCS should have merged. He argues that both offenses arose "from a single

_____

error was so insignificant by comparison that the error could not have contributed to the verdict.

Commonwealth v. Poplawski, 130 A.3d 697, 716 (Pa. 2015) (citations and quotation marks omitted).

- 11 -

act, at the same location, on the same day[,]" and that both offenses "articulate essentially the same elements." Appellant's Brief at 24. Appellant's merger claim "raises a challenge to the legality of his sentence." Commonwealth v. Kiley, 216 A.3d 1123, 1127 (Pa. Super. 2019). "Therefore, our standard of review is de novo and our scope of review is plenary." Id.

> Section 9765 of the Pennsylvania Sentencing Code provides as follows regarding the merger of crimes for sentencing purposes:
>
>> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher[-]graded offense.
>
> 42 Pa.C.S. § 9765. Accordingly, merger is appropriate only when two distinct criteria are satisfied: (1) the crimes arise from a single criminal act; and (2) all of the statutory elements of one of the offenses are included within the statutory elements of the other. Id.

Commonwealth v. Jenkins, 96 A.3d 1055, 1056 (Pa. Super. 2014).

The Controlled Substance, Drug, Device and Cosmetic Act ("the Act") provides that a "person commits the offense of [OML] if the person knowingly causes a chemical reaction involving ephedrine, pseudoephedrine or phenylpropanolamine, or any other precursor or reagent substance … for the purpose of manufacturing methamphetamine or preparing a precursor or reagent substance for the manufacture of methamphetamine." 35 P.S. § 780-113.4(a)(1) (emphasis added). The Act also prohibits MCS, or "the

manufacture ... or possession with intent to manufacture ... a controlled substance...." 35 P.S. § 780-113(a)(30) (emphasis added).

A jury convicted Appellant of both charges, and the trial court sentenced him to separate, consecutive sentences for each offense. The trial court concluded that these offenses did not merge for sentencing purposes, reasoning that not all the statutory elements of one offense are included in the other, because the offenses have distinct mens rea elements. See TCO at 18-19. The trial court was silent as to whether both offenses arose from the same criminal act. The Commonwealth relies entirely on the trial court's analysis. See Commonwealth's Brief at 3.

The trial court's merger analysis was flawed. Initially, the court was correct to note that the offenses contain distinct mens rea elements. Proof of OML requires that a person knowingly manufactures methamphetamine, whereas proof of MCS requires that a person intentionally manufactures the same substance under the factual predicates of this case. 35 P.S. § 780-113.4(a)(1); 35 P.S. § 780-113(a)(30). The trial court further acknowledged that the Crimes Code "is clear that an intentional act subsumes the culpability of a knowing act, but a knowing act does not subsume the culpability of an intentional act." TCO at 19 (citing 18 Pa.C.S. § 302(e)). However, the Court then hastily concluded that merger must not apply. Id.

To the contrary, the fact that the intentional act of manufacturing methamphetamine subsumes a knowing act of manufacturing methamphetamine is precisely why all of the statutory elements of OML are

included within the statutory elements of MCS, in satisfaction of the elements test set forth in 42 Pa.C.S. § 9765. While not every commission of OML will also result in the commission of MCS, every MCS offense involving the manufacturing of methamphetamine will necessarily satisfy the elements of OML, because every intentional act of producing the substance is also a knowing act of producing the same. Indeed, this Court recently held that OML is a lesser-included offense of MCS when arising out of the same criminal act of producing methamphetamine, although it did not specifically analyze the mens rea elements of the two offenses. See Commonwealth v. Kiley, 216 A.3d 1123, 1128–29 (Pa. Super. 2019). Nevertheless, Kiley is binding on this Court, and due to the fact that the trial court's elements-test analysis is unsound, we would conclude that it does not call Kiley into question in any event.

Thus, merger applies here if Appellant's commission of the crimes of OML and MCS arose from the same criminal act. Although the trial court did not analyze that portion of the merger test, it is plain from the record that both offenses stem from the discovery of Appellant's methamphetamine manufacturing operation during the search of his home on or about July 27, 2017. Accordingly, the factual predicates of both offenses are the same conduct in the case sub judice and, therefore, the offenses should have merged for sentencing purposes. Appellant's separate sentences for OML and MCS are illegal. Thus, we must remand for resentencing.

Finally, Appellant asserts that the trial court applied an incorrect prior record score in the calculation of the guideline sentencing ranges for his offenses. The Commonwealth agrees, see Commonwealth's Brief at 3, and joined Appellant's motion to remand for resentencing, which is currently pending before this Court. Indeed, the trial court also found this claim meritorious. See Memorandum Order, 7/5/19, at 1-2. Accordingly, no further analysis is needed, and we have already concluded that a remand for resentencing is required in this case due to Appellant's illegal sentence. The joint motion to remand for resentencing is granted.

In sum, we conclude that Appellant's sufficiency claim is waived and, even if it had not been waived, it is meritless. Appellant's evidentiary claim is also waived, but, in any event, meritless. However, Appellant is entitled to a new sentencing hearing because his sentences for OML and MCS should have merged, and because his prior record score was incorrectly calculated.

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/13/2020

- 15 -