J-S64019-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIC EISEN | : | |
| | : | |
| Appellant | : | No. 444 WDA 2019 |

Appeal from the PCRA Order Entered March 11, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0004232-1993

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIC EISEN | : | |
| | : | |
| Appellant | : | No. 445 WDA 2019 |

Appeal from the PCRA Order Entered March 11, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0002685-1993

BEFORE:   BOWES, J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED AUGUST 31, 2020**

Eric Eisen appeals from the order, entered in the Court of Common Pleas

of Allegheny County, dismissing as untimely his serial petition filed pursuant

---

[*] Retired Senior Judge assigned to the Superior Court.

to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.[1] After careful review, we agree with the PCRA court that Eisen's petition is untimely and he has failed to allege an exception to the jurisdictional time bar. We further find that Eisen is entitled to no relief on his breach of contract claim, given that he has received the benefit of his bargained-for exchange. We, therefore, affirm the PCRA court's decision.

In February of 1993, Eisen and his co-defendant, James Smith, were arrested after robbing and killing Daniel Bostedo during an alleged drug purchase. Then-Deputy District Attorney, W. Christopher Conrad, Esquire, (Conrad), prosecuted the case. On May 23, 1994, Eisen, represented by

---

[1] By filing two separate notices of appeal with one docket number on each notice, Eisen has complied with the dictates of **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), which held that "where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each of those cases." **See** Pa.R.A.P. 341(a); **see also Commonwealth v. Johnson**, 2020 PA Super 164 at *12 (Pa. Super. filed July 9, 2020) (en banc) (concluding that "in so far as [**Commonwealth v. Creese**, 216 A.3d 1142 (Pa. Super. 2019)] stated 'a notice of appeal may contain only one docket number[,]' . . . that pronouncement is overruled."); **Commonwealth v. Larkin**, 2020 PA Super 163 at *3 (Pa. Super. filed July 9, 2020) (en banc) (recognizing that **Johnson** "expressly overruled **Creese** to the extent that **Creese** interpreted **Walker** as requiring the Superior Court to quash appeals when an appellant, who is appealing from multiple docket numbers, files notices of appeal with all of the docket numbers listed on each notice of appeal."). Therefore, we shall proceed with our review of Eisen's appeal.

William Manifesto, Esquire,[2] pled guilty to second-degree murder,[3] robbery,[4] and criminal conspiracy[5] pursuant to a negotiated plea agreement. In accordance with the plea agreement, the Commonwealth prepared a "Sentencing Exhibit" for "purposes of Gubernatorial Clemency consideration," documenting certain facts favorable to Eisen and urging that "serious consideration be given to [him]" in the event that he later sought commutation of his sentence. Sentencing Exhibit, 5/23/94. Further pursuant to the plea agreement, the trial court sentenced Eisen to a term of life imprisonment that same day. Eisen did not file post-sentence motions, a petition to withdraw the guilty plea, or a direct appeal.

On December 28, 1995, Eisen, represented by Caroline Roberto, Esquire, filed his first PCRA petition, in which he argued that Attorney Manifesto was ineffective because his guilty plea was unlawfully induced. **See** PCRA Petition, 12/28/95, at 3-9. Among other things, Eisen claimed that his guilty plea colloquy was "defective and in violation of [Pa.R.Crim.P. 319(b)]" because the trial court failed to "review, in open court, the terms and content of the [Sentencing Exhibit, which was the] 'only consideration' offered to

---

[2] Eisen's father, Bernard Eisen, Esquire, has assisted Eisen's attorneys throughout the course of these legal proceedings.

[3] 18 Pa.C.S.A. § 2502(b).

[4] 18 Pa.C.S.A. § 3701.

[5] 18 Pa.C.S.A. § 903.

[Eisen] in exchange for his plea to life imprisonment without parole." ***Id.*** at 11 (quotations in original). On December 31, 1996, the PCRA court granted Eisen relief, ruling that his guilty plea colloquy was incomplete. On appeal, however, this Court reversed the trial court's order, holding that the colloquy was sufficient to establish a knowing and voluntary plea, and reinstated Eisen's plea, conviction, and judgment of sentence. ***See Commonwealth v. Eisen***, 168 Pittsburgh 1997 (Pa. Super. filed May 19, 1998) (unpublished memorandum).[6]

On August 25, 2003, Eisen filed his second PCRA petition, again arguing that his guilty plea was unlawfully induced, citing after-discovered evidence in the form of prosecutorial misconduct. Specifically, in February of 2000, Conrad represented in a televised interview that he believed Eisen would spend the rest of his life in prison. Eisen contended that Conrad's knowing misrepresentation of the Sentencing Exhibit's value resulted in an unlawful plea. Although the PCRA court concluded that Eisen's petition was untimely filed, the court vacated Eisen's guilty plea and awarded him a new trial pursuant to Pennsylvania's habeas corpus statute, based on its finding that Eisen's guilty plea had been unlawfully induced. On appeal, this Court again vacated the PCRA court's order and reinstated Eisen's judgment of sentence,

---

[6] This Court denied Eisen's petition for reargument on July 30, 1998. The Supreme Court of Pennsylvania denied Eisen's petition for allowance of appeal on December 1, 1998. ***Commonwealth v. Eisen***, 1998 WL 831572 (Pa. 1998).

holding that granting relief outside the confines of the PCRA was erroneous. *See Commonwealth v. Eisen*, 679 & 885 WDA 2004 (Pa. Super. filed Oct. 23, 2006) (unpublished memorandum).[7]

On November 23, 2010, Eisen filed his third PCRA petition. In that petition, Eisen argued that a 1997 amendment to the composition of the Pennsylvania Board of Pardons, which ostensibly made it more difficult for him to obtain clemency, violated the terms of his plea agreement, the "sole purpose of [which]" was to "markedly increase his chances of receiving a favorable recommendation from the [Board of Pardons] to the governor in the future." PCRA Petition, 11/23/10, at 7. The PCRA court dismissed the petition as untimely on January 26, 2011. This Court affirmed that order on March 19, 2012. *Commonwealth v. Eisen*, 345 WDA 2011 (Pa. Super. filed March 19, 2012) (unpublished memorandum). On December 4, 2012, the Supreme Court of Pennsylvania denied his petition for review.

Eisen filed the instant PCRA petition—his fourth—on November 3, 2017. In his petition, Eisen alleged newly-discovered facts in the form of: (1) Conrad's September 6, 2017 statement to Eisen's father expressing "surprise" that Eisen is still in prison, meant to prove "shared intentions" between Eisen

---

[7] After granting Eisen's petition for reargument on January 5, 2006, this Court again reversed the trial court's grant of a new trial on October 23, 2006. On November 22, 2006, Eisen petitioned the Supreme Court of Pennsylvania for allowance of appeal. The Court granted Eisen's petition on October 18, 2007, but thereafter dismissed the petition as improvidently granted on March 24, 2008. *Commonwealth v. Eisen*, 943 A.2d 261 (Pa. 2008). On June 20, 2008, Eisen filed a petition for writ of certiorari with the Supreme Court of the United States, which was denied on October 6, 2008.

and Conrad from 1994 that Eisen be released from prison within 20 years; and (2) Conrad's October 22, 2017 statement to Eisen's family friend, Burton Caplan, suggesting that "he gave [Eisen] a life sentence [because] he knew [Eisen] . . . r[a]n around with a gun and [] had a bad reputation." *See* Brief of Appellant, at 13-15.  Following evidentiary hearings on September 21, 2018 and January 10, 2019, the PCRA court dismissed the petition as untimely on March 11, 2019.  Eisen timely filed a notice of appeal.  Both he and the trial court complied with Pa.R.A.P. 1925.

On appeal, Eisen raises the following issues for our review:

1. Whether the testimony of the original prosecutor [Conrad], including "that there was a bargain[ed] for exchange . . . for a reasonable amount of [prison] time with good behavior[,]" established the Commonwealth's "shared intent" with [Eisen] as part of his plea agreement that he would be released from prison within a reasonable time based upon good behavior and not have to serve a full life sentence?

2. Whether the trial court erred when it concluded that recent statements made by [Conrad] concerning [Eisen']s plea agreement did not constitute "newly-discovered evidence" because[:] [Conrad] allegedly could have been called to testify at two prior PCRA hearings where [Eisen] had no basis to raise this "shared intent" theory in those hearings, both of which occurred less than twenty years after the plea bargain[;] for years [Conrad] refused to speak with [Eisen's] father despite repeated requests and previously had stated in a television interview that [Eisen] would never be released from prison[;] and for [Conrad] to have testified previously [Eisen] would have needed advanced notice of the substance of his testimony?

3. Whether [Eisen]'s [p]etition seeking to enforce the plea agreement that he would be released from prison within a reasonable time with good behavior based upon the "shared

- 6 -

intent" theory falls outside of the PCRA, and, thus, is not subject to the PCRA's timeliness provisions?

4. Whether the trial court erred in concluding that [Eisen] previously raised the same arguments of prosecutorial misconduct and ineffective assistance of counsel[,] even though the instant proceeding sought to enforce the [p]arties' shared intent that [Eisen] would be released within a reasonable time upon good behavior based on [Conrad]'s recent statements and there is no allegation of ineffectiveness?

5. Whether the trial court erred when it dismissed [Eisen]'s post-conviction petition where newly[-]discovered [facts] showed that the Commonwealth insisted on a life sentence based on undisclosed allegations that [Eisen] had a "bad" reputation and carried a gun even though he did not have such a reputation and had a lawful permit to carry?

Brief of Appellant, at 4.

When reviewing the denial of a PCRA petition, we must determine whether the PCRA court's order is supported by the record and free of legal error. **Commonwealth v. Smith**, 181 A.3d 1168, 1174 (Pa. Super. 2018). We are bound by a PCRA court's credibility determinations, but with regard to a court's legal conclusions, we apply a *de novo* standard. **Id.** Before reaching the issues that Eisen raises in his appellate brief, however, we must first ascertain whether the PCRA court correctly determined that his fourth petition was untimely filed. **See Commonwealth v. Murray**, 753 A.2d 201, 203 (Pa. 2000) (PCRA time limit is jurisdictional; court may only review untimely petition if statutory exception applies).

Generally, a petition for relief under the PCRA, including a second or subsequent petition, must be filed within one year of the date the judgment of sentence becomes final unless the petitioner alleges, and proves, an

exception to the time for filing the petition, set forth at 42 Pa.C.S.A. §§ 9545(b)(1)(i), (ii), and (iii).[8]   A PCRA petition invoking one of these statutory exceptions must "be filed within 60 days of the date the claims could have been presented." ***See Commonwealth v. Hernandez***, 79 A.3d 649, 651-52 (Pa. Super. 2013) (citations omitted); ***see also*** 42 Pa.C.S.A. § 9545(b)(2).[9]

Eisen's judgment of sentence became final on May 23, 1994.  Therefore, Eisen had sixty days until July 22, 1994, to timely file a PCRA petition.  42

---

[8]   The exceptions to the timeliness requirement are:

> (i) the failure to raise the claim previously was the result of interference of government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States.

> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. §§ 9545(b)(1)(i), (ii), and (iii).

[9] On October 24, 2018, the General Assembly amended subsection 9545(b)(2) to enlarge the time in which a petitioner may invoke a PCRA time-bar exception from 60 days to one year from the date the claim arises.  ***See*** Act 2018, Oct. 24, P.L. 894, No. 146, § 2, effective in 60 days [Dec. 24, 2018]. However, the amendment applies only to claims arising on December 24, 2017, or thereafter.  ***Id.*** at § 3.  Here, Eisen did not file the instant petition until November 3, 2017, based on alleged statements made in September and October, 2017.  Thus, his claims did not arise on or after December 24, 2017, and he is subject to the 60-day time limitation under 9545(b)(2).

Pa.C.S.A. § 9545(b)(1). His fourth Petition, filed over 23 years later, is patently untimely. Accordingly, Eisen must plead and prove that one of the statutory timeliness exceptions applies, and he must have filed the petition within sixty days of the date the claim could have been brought. 42 Pa.C.S.A. §§ 9545(b)(1)-(2).

Here, Eisen asserts that his petition is timely under the newly-discovered facts exception, codified at 42 Pa.C.S.A. § 9545(b)(1)(ii). This exception "has two components, which must be alleged and proved. Namely, the petitioner must establish that: (1) the facts upon which the claim was predicated were unknown; and (2) [those facts] could not have been ascertained by the exercise of due diligence." *Commonwealth v. Bennett*, 930 A.2d 1264, 1272 (Pa. 2007); 42 Pa.C.S.A. § 9545(b)(1)(ii). Due diligence requires a petitioner to take reasonable efforts to uncover facts that may support a claim for collateral relief. *Commonwealth v. Burton*, 121 A.3d 1063, 1071 (Pa. Super. 2015) (en banc). A petitioner must explain why he could not have learned the new fact(s) earlier by exercising due diligence. *Commonwealth v. Breakiron*, 781 A.2d 94, 98 (Pa. 2001). Additionally, the focus of this exception is on the newly-discovered facts, not on a newly-discovered or newly-willing source for previously known facts. *Commonwealth v. Marshall*, 947 A.2d 714, 720 (Pa. 2008).

Eisen's first alleged newly-discovered fact is a statement Conrad made to Eisen's father, Bernard Eisen, on September 6, 2017, expressing "surprise" that Eisen was still in prison. Brief of Appellant, at 13-14. Eisen submits that

"th[is] new evidence . . . [shows] that the Commonwealth . . . shared the same intention as [Eisen] that he would be released with good behavior in a reasonable time and not have to serve a life sentence." *Id.* at 17.

We reject Eisen's contention that he can "newly discover" Conrad's intentions that he *shared* with Eisen in 1994. By the plain meaning of the phrase "shared intentions," Eisen concedes that he must have known of Conrad's alleged intentions that Eisen not serve a life sentence as of the date of his plea, May 23, 1994. Conrad's recently expressed "surprise" that Eisen is still in prison is, at best, a new source or newly-willing source for a previously-known fact, which is insufficient to overcome the PCRA's time-bar. ***Commonwealth v. Marshall***, ***supra*** at 720 (Pa. 2008).[10] Moreover, as discussed further ***infra***, the record belies Eisen's argument that he and Conrad

_____

[10] Testimony from the PCRA hearing also supports our conclusion that the purported evidence is a newly-willing source:

Q: So when you heard, that [Eisen] was still in prison after 23 years, you were very surprised; is that correct?

[Conrad]: Yeah. I mean, I was kind of surprised. So I had assumed that there had been some problem in it, you know, in the [commutation] process. But I mean to be frank, I'm not sure that my surprise is that relevant [other than] that's the reason that we are here, because I responded to it that way.

N.T. PCRA Hearing, 1/10/19, at 34.

actually shared the intention that Eisen be guaranteed a release from prison; the real bargain was for the *possibility* of release.[11]

Assuming, *arguendo*, that Eisen did not know of his own intentions allegedly shared with the Commonwealth in 1994, he still, with the exercise of due diligence, could have ascertained these facts long before the instant PCRA petition was filed in 2017. Eisen cannot, more than 23 years after entering his guilty plea—following several PCRA hearings at which he litigated the terms of his plea agreement without calling Conrad to testify—credibly argue that this round of litigation "was the first time [Eisen] was able to confirm and thus offer proof of the specifics of the actual deal." **See** Brief of Appellant, at 16; **see also** N.T. PCRA Hearing, 7/18/96, at 4-10 (discussing with Conrad and Attorney Manifesto whether Conrad might be called as a witness). We agree with the PCRA court that it was unreasonable for Eisen not to call Conrad to testify at any of the previous PCRA hearings regarding

_____

[11] Throughout his appellate brief, Eisen argues inconsistently that his and Conrad's "shared intentions" were for Eisen to be released: "within a reasonable time upon good behavior," Brief of Appellant, at 6 and 17; in "[l]ess than 20 years . . . which was [] conditioned on good behavior," *id.* at 16 (brackets in original); "in 10 to 12 years with good behavior," *id.* at 18; "[in] at least twenty years," *id.* at 28, n.10; and "in a reasonable time, [which] 20 years would have been[.]". *Id.* at 20. As discussed further *infra*, Conrad testified unequivocally at the January 2019 PCRA hearing that this was not the case. **See** N.T. PCRA Hearing, 1/10/19 at *id.* at 6 ("a 10-to-20 year sentence[] definitely was not enough in this particular matter"); *id.* at 35 ("no certain figure was ever discussed"); *id.* at 34 (Q: So which is the bargain[ed] for exchange; the 20-year deal, or the hopes of clemency? [Conrad]: It is purely, if you want a one-word answer to that, it's for the possibility of clemency by commutation of sentence, okay.").

their alleged "shared intentions" that Eisen not spend his life in prison. Trial Court Opinion, 5/3/19, at 4. Incredibly, Eisen argues that although these supposed "shared intentions" existed as of 1994, he "had no basis to raise this theory in the two [prior] hearings [that] occurred less than twenty years after the plea bargain," given that Conrad testified that Eisen should not have been released until 2014 (after twenty years) at the earliest." Brief of Appellant, at 34. Due diligence would have required Eisen to subpoena Conrad to testify regarding the purported specifics of their agreement—i.e., that Eisen be released from prison as a matter of guarantee—at the latest, in 2004, after Eisen filed a PCRA petition following Conrad's representation on television that Eisen would never get out of prison.[12] Eisen's failure to do so, until 2017, demonstrates his lack of due diligence. Therefore, his first claim fails. **_Burton_**, **_supra_**.

Eisen's second alleged newly-discovered fact is that, during plea negotiations, Conrad "enhanced [Eisen's] sentence based on previously undisclosed and false allegations that [Eisen] carried a gun and had a bad reputation." Brief of Appellant, at 26. Eisen claims to have discovered this fact on October 22, 2017. Specifically, Burton Caplan testified on Eisen's behalf as follows:

---

[12] We note again that, as discussed further **_infra_**, the record shows this was _not_ the bargained-for exchange between Eisen and Conrad or with the Commonwealth.

Q: Did you have an occasion on or about [October 22, 2017] to meet with [Conrad]?

A: Yes.

Q: Okay. And why did you meet with [Conrad]?

A: Well, I wanted to talk to him about [Eisen], and I found out from friends that he would go to this bar restaurant up in Dormont, so I went to the bar, and sure enough, [Conrad] was there.

* * *

Q: Okay. And did you have a conversation with [Conrad]?

A: Yeah. I was surprised when I walked in that he remembered me . . . and so we started to talk, and then I talked about [Eisen.]

Q: Okay. What was that conversation?

A: Conrad talked about a normal sentence.

Q: You listened to him?

A: Conrad— I don't know the legal things to say, but Conrad told me that time he was very surprised that [Eisen] was still in prison. He thought he would be out. And I asked him why he gave him such a sentence, and he told me that he knew of [Eisen] from downtown Pittsburgh running around with a gun.

N.T. PCRA Hearing, 9/21/18, at 41-44. Conrad, however, did not corroborate this testimony. Conrad testified that his conversation with Caplan "was very brief. I didn't know that much about it. He indicated that he knew the Eisen family and [asked] would I accept a call from them, and I believe I told him yes, and I did receive one pursuant to that." N.T. PCRA Hearing, 1/10/19, at 13.

We agree with the trial court that Eisen failed to plead and prove that the newly-discovered fact exception applies here. Eisen seems to submit,

- 13 -

incorrectly, that Conrad, and not the trial court, imposed his judgment of sentence. *See* Brief of Appellant, at 26 (claiming Conrad "enhanced [Eisen]'s sentence. . ."); *id.* at 51 ("Eisen was sentenced more harshly because of false, rumor-grade information *that was neither conveyed to him nor to the* [*c*]*ourt*") (emphasis added). In our system of justice, it is the judge, not the prosecutor, who imposes sentence. Pursuant to a plea agreement, the trial court sentenced Eisen to the *mandatory* sentence of life imprisonment for second-degree murder, which Eisen himself agreed to in the face of virtually unassailable evidence,[13] whereby he might some day be released from prison. *See* N.T. Sentencing, 5/23/94, at 3, 8, 21. *See also* 18 Pa.C.S.A. § 1102(b) ("a person who has been convicted of murder of the second degree . . . shall be sentenced to a term of life imprisonment."); Sentencing Exhibit, 5/23/94, Commonwealth Exhibit 5, at 3 ("It is the request of th[e] [District Attorney's O]ffice [of Allegheny County] that serious *consideration* be given to [Eisen] at the point of any clemency request.") (emphasis added). Eisen's argument—

---

[13] On February 8, 1993, following reports of a shooting nearby, police stopped Eisen's vehicle, with James Smith as Eisen's passenger, and noticed blood on the trunk of the vehicle and blood-stained latex gloves on the floor. Daniel Bostedo's dead body was found in the trunk, which was lined with trash bags, next to the murder weapon, a shotgun. Eisen admitted to police that he was part of a scheme to rob Bostedo that resulted in Bostedo's death. *See Commonwealth v. Eisen*, 679 WDA 2004, 885 WDA 2004 (Pa. Super. filed Oct. 23, 2006) (unpublished memorandum). The Commonwealth also had Pa.R.E. 404(b)(2) evidence that Eisen was previously involved in the robbery of another drug dealer, N.T. PCRA Hearing, 7/18/96, at 79-82, 97, and "a tremendous amount of evidence indicating premeditation." *Id.* at 67.

that his mandatory sentence was enhanced based on information of which the trial judge was unaware—defies logic. **See** Brief of Appellant, at 51.

In addition, the record belies Eisen's claim that the now-disputed character evidence from 1994 is newly-discovered. Plea counsel testified at the first PCRA hearing that he "did[ not] seek [to introduce] character evidence because [he] was concerned with negative character." N.T. PCRA Hearing, 7/18/96, at 109; **see also id.** at 174 (Eisen's sister, Attorney Tracy Rollins, testifying that "Mr. Manifesto was afraid of the character evidence, [he] didn't know how to deal with it," and that "there were plenty who might testify as to [Eisen's] bad character.").[14] Similarly, the record shows that Eisen and his father were aware of and actually disputed Conrad's alleged knowledge of Eisen "running around with a gun" as early as the first PCRA hearing. **See id.** at 134 (Bernard Eisen testifying that he "wanted it in the record [on the Sentencing Exhibit] that Eric was not in possession of a gun."); **id.** at 152 (Bernard Eisen testifying that "[the shotgun] was a prop. They [] talked about exchanging or selling to Mr. Bostedo guns and drugs and this was a show of good faith, that here is the type of guns we'll get you, here is a shotgun to start with[.]").

---

[14] Attorney Manifesto also had "major concern[s]" about evidence coming in that Eisen was a drug dealer who previously ripped off another drug dealer—an incident that was written about in local newspapers—"showing motive and a lack of accident or mistake, even though it's a prior criminal act." N.T. PCRA Hearing, 7/18/96, at 79-82, 97.

- 15 -

Given the foregoing, we conclude that Eisen has neither established that the newly-discovered fact exception nor any of the other statutory exceptions to the PCRA's timeliness requirement apply to him. Accordingly, the PCRA court correctly determined that it lacked jurisdiction to address the merits of his untimely serial petition. **Murray**, **supra**.

Eisen also seeks relief outside the scope of the PCRA. Specifically, he submits that "[i]n the alternative, this Court should find that [Eisen]'s [p]etition is a motion to enforce a plea agreement, and, thus, falls outside the PCRA." Brief of Appellant, at 44. **See Commonwealth v. Partee**, 86 A.3d 245 (Pa. Super. 2014) (holding it was error for trial court to treat appellant's motion to enforce plea agreement as PCRA petition, but finding appellant was not entitled to specific performance); **id.** at 247 (motion to enforce plea agreement "is not subject to PCRA's time constraints, and hence, we have jurisdiction to entertain it"), **abrogated on other grounds in Commonwealth v. Fernandez**, 195 A.3d 299 (Pa. Super. 2018).

Plea agreements are contractual in nature and must be analyzed under contract-law standards. **Commonwealth v. Farabaugh**, 136 A.3d 995, 1001 (Pa. Super. 2016). When analyzing whether a plea agreement has been breached, this Court looks "to what the parties . . . reasonably understood to be the terms of the agreement." **Commonwealth v. Hainesworth**, 82 A.3d 444, 447 (Pa. Super. 2013). Because contract interpretation is a question of

law, our standard of review is *de novo* and the scope of review is plenary. ***Gillard v. Martin***, 13 A.3d 482, 487 (Pa. Super. 2010).

Upon review of the extensive record in this case, where the terms of Eisen's plea agreement have been written about and testified to repeatedly over the past 25 years, we conclude that Eisen is entitled to no relief, as he is already receiving the benefit of his bargained-for exchange with the Commonwealth.

As Eisen has previously and repeatedly stated to this Court, the bargained-for consideration he received in exchange for his guilty plea was the Sentencing Exhibit *only*, the sole purpose of which was to increase his *chances* of receiving clemency. ***See*** PCRA Petition, 12/28/95, at 11 ("the only consideration for [Eisen']s plea to a term of life imprisonment without parole was the Commonwealth's tender of a 'sentencing exhibit which [] document[s] the facts . . . for [any] gubernatorial process that might take place in the future' due to the nature of the mandatory life sentence."); PCRA Petition, 11/23/10, at 7 ("Eisen's sole purpose of agreeing to plead guilty to a life sentence without parole in exchange for the Sentencing Exhibit was the [p]arties' understanding that the agreement reached with the Commonwealth would markedly increase his chances of receiving a favorable recommendation from the Pardons Board to the Governor for clemency[.]").

Now, for the first time, Eisen abandons this position to argue instead that his bargained-for exchange was in fact a guarantee that he not serve a

life sentence. As we stated in addressing his most recent PCRA, however, Eisen "cannot abandon a declaration . . . made in a prior PCRA petition merely because it is inexpedient to his argument on a subsequent appeal." ***Commonwealth v. Eisen***, 168 Pittsburgh 1997 (Pa. Super. filed May 19, 1998) (unpublished memorandum). Moreover, the record reflects that this was simply not the case.

The plain language of the sentencing exhibit makes clear that no guarantee for Eisen's release was ever agreed upon: "the purpose of the Exhibit is to document for purposes of Gubernatorial Clemency *consideration* relevant factors existing at the time of sentencing." Sentencing Exhibit, 5/23/94, at 1 (emphasis added). Before entering his guilty plea in 1994, Eisen represented to the trial court that he understood this to be the case:

> [Conrad]: My understanding of the plea arrangement is the following: [Eisen], at the information charged, criminal homicide for the record, is 9302685, will plead guilty to a count of second[-]degree murder for which there is a mandatory term of life imprisonment.
>
> At the second information, 9304232, [Eisen] will plead guilty to the first count of robbery and the second count of criminal conspiracy, which generally alleges his involvement with James Smith in the robbery of the deceased, in the criminal homicide of Daniel Bostedo.
>
> Obviously these two charges are related. . . . We would ask the Court as part of the agreement that there is no further sentence on the robbery and Count two, the criminal conspiracy, [to] which [Eisen] will plead guilty.
>
> *The only consideration for this would be that on completion of this particular sentencing proceeding today, plea and sentence action, the Commonwealth will tender to the Court a sentencing exhibit[.]*

- 18 -

* * *

*The purpose of the sentencing exhibit will be for whatever gubernatorial proceeding might take place in the future due to the nature of the mandatory life sentence.*

* * *

*It is to be entered in the file so that — obviously on the life sentence it is mandatory without parole. The only manner in which [Eisen] can be eligible for parole is gubernatorial clemency and commutation of the life sentence. As often happens over the length of time, it is recognized that when people try to get in touch with the prosecutor on the case or family of the victim . . . it has not been recorded, you know, the nature of the cooperation has not been properly recorded. That's all this sentencing exhibit is intended to do.*

* * *

The Court: All right. That made it somewhat clearer. Mr. Eisen, did you hear and understand Mr. Conrad's statements?

[Eisen]: Yes, Your Honor.

N.T. Sentencing, 5/23/98, at 4-7 (emphasis added). As mentioned above, Eisen maintained this position in subsequent PCRA petitions.

At the most recent PCRA hearing, in January 2019, Conrad reiterated, repeatedly, that the Commonwealth's agreement with Eisen was *not* a guarantee that he be released from prison.

Q: It wasn't a guarantee that he would get out in 20 years?
[Conrad]: No, obviously not[.]

* * *

Q: [The] sentencing exhibit was supposed to carry forth the wishes of the District Attorney's Office in 1993 as far as [y]our

- 19 -

position on the commutation — or the clemency of Mr. Eisen in the future, correct?

A: At that time, correct.

Q: At that time, okay, but it was not part of that agreement that there was any guarantee that [Eisen] would get out at any point in the future, correct?

[Conrad]: No. . . . [T]here was no guarantee that that would be the case.

Q: So, as part of your negotiations with Mr. Manifesto, that was the meeting of the minds so to speak, that this was their best chan[c]e for clemency, and you provided it to them, right, Mr. Conrad?

[Conrad]: Yes.

* * *

[Conrad]: I can't come in and represent to the Court that, you know, the only reason we [gave] him this plea is because [we] were going to guarantee that he gets out after 20 years. As a matter of fact, that was not []ever contemplated.

* * *

Q: So which is the bargain[ed] for exchange; the 20-year deal, or the hopes of clemency?

[Conrad]: It is purely, if you want a one-word answer to that, it's for the possibility of clemency by commutation of sentence, okay.

N.T. PCRA Hearing, 1/10/19, at 20-24, 34-35.

The record makes clear that both parties reasonably understood their agreement was for Eisen to plead guilty to second-degree murder in exchange for a sentencing exhibit that would aid him in possibly receiving a commutation of his life sentence in the future. **_Hainesworth_**, **_supra. See_**

N.T. PCRA Hearing, 1/10/19, at 67-74 (Attorney Manifesto testifying that, in addition to the Sentencing Exhibit, he felt several things would aid Eisen at the time of commutation: (1) Eisen's expression of remorse to the Bostedo family; (2) that the position of the District Attorney's Office would be favorable to Eisen because he admitted his involvement in Daniel's killing and saved the Bostedo family "the agony of a trial;" and (3) that "a tremendous amount of evidence indicating premeditation" would be "sanitized" from the record); *Commonwealth v. Eisen*, 168 Pittsburgh 1997 (Pa. Super. filed May 19, 1998) (unpublished memorandum), at 4-7 ("[obtaining] favorable consideration (not a promise) for commutation in the future, [given] the risk of trial and possibility, if not likelihood, of a first[-]degree murder verdict with any prospect of commutation being seriously diminished, was the heart of the bargain accepted and achieved by [Eisen]."). Accordingly, Eisen has received the benefit of his bargained-for exchange, and he is entitled to no relief. *See Commonwealth v. Yager*, 685 A.2d 1000, 1004 (Pa. Super. 1996) ("The law does not require that [a defendant] be pleased with the outcome of his decision to enter a plea of guilty.").

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2020